Two indictments were filed against plaintiffs in error, in the Circuit Court of Brevard County. The first count of one indictment charged both plaintiffs in error jointly with culpable negligence in shooting into an automobile which they were pursuing and thereby inflicting a wound upon one of the occupants; and the second count of this indictment charged Dixon with the shooting and Brannen as being present, aiding and abetting in the shooting. The other indictment filed at the same time charged Dixon with an aggravated assault upon the same person and Brannen with being present, aiding and abetting in the commission of the assault.
A motion to quash both counts of the indictment for culpable negligence was sustained as to the first count, and overruled as to the second count.
By stipulation of attorneys at the trial, the second count of the indictment charging culpable negligence was consolidated with the charge of aggravated assault and all evidence submitted to the same jury at the same time. The jury acquitted defendants of the charge of culpable negligence and convicted them on the charge of aggravated assault, and Dixon was sentenced to pay a fine of $100.00 and costs and in default of such fine and costs to serve a term of 30 days in the county jail, and Brannen was sentenced to pay a fine of $150.00 and costs or serve 60 days in the county jail.
A motion for a new trial was denied and both defendants took writ of error from the above sentence and judgment. *Page 843 
The first assignment of error is based upon the denial of the motion to quash the second count of the indictment for culpable negligence which is based upon Section 7164, Compiled General Laws of Florida, 1927. Upon trial the jury returned a verdict of not guilty upon this count and the denial of the motion to quash that count, if error, is cured by the verdict.
There are several errors assigned in this case, and while all have been carefully considered, it is only deemed necessary to refer to those legally presented and meriting special mention.
The 12th and 13th grounds of the motion for new trial are based upon charges of the court covering the subject of culpable negligence which are eliminated, by reason of the verdict.
The 4th ground of the motion for new trial is that "The Court erred in refusing to give each and every the requested charges of the defendants." The only assignment of error having any reference to the charges given or refused by the court is assignment number 2, as follows: "The court erred in overruling the defendant's motion for a new trial." While under this assignment any question properly raised by any ground of the motion for new trial may be considered as presented for review, it has long been the rule in this State, that if one assignment of error attacks the entire charge given by the court, or the court's refusal to give a number of requested charges, such assignment will not be considered except to ascertain if any one of said charges was properly given, or refused. Shiver v. State, 41 Fla. 630, 27 So. 36; Crawford v. State, 70 Fla. 323, 70 So. 374. See also number of cases cited Vol. 1, Wurt's Florida Digest, page 139. *Page 844 
The brief of plaintiffs in error questions the legality of the charges given by the Court; but while the bill of exceptions shows that an exception was taken by defendants to each charge given, yet no ground of the motion for new trial or any assignment based thereon attacked any charge given by the court of its own motion, except those charges with reference to culpable negligence which we have heretofore disposed of.
Where the verdict is for a lesser offense it is not necessary to consider alleged errors in charges relating to a higher offense when the charge complained of could not have contributed to the conviction. Thomas v. State, 47 Fla. 99, 36 So. 161; Morris v. State, 98 Fla. 609, 123 So. 912. The charges upon culpable negligence could hardly have contributed to the conviction of aggravated assault in this case.
The question raised by the motion for new trial as to the sufficiency of the evidence to sustain the verdict of aggravated assault might be properly disposed of by stating that the jury settled that question, if it appears that there was any credible evidence before the jury to sustain the verdict. The main issue involved was whether the defendants exceeded their authority as arresting officers. The evidence shows, and it is admitted, that they pursued the automobile in the night time for the purpose of arresting the occupants and recovering an automobile reported to have been stolen, and in so doing they fired into the car and wounded two of the occupants, and that the car proved not to be the one which they had instructions to intercept.
Under Section 8323 Compiled General Laws of Florida, 1927, it is lawful for any police officer to arrest and take into custody without a warrant any person who such *Page 845 
officer "has reasonable ground to believe, and does believe," has committed a felony, or whom he finds in the act of committing any felony, or about to commit any felony. Osborne v. State, 87 Fla. 418, 100 So. 365; Haynes v. State, 71 Fla. 585, 72 So. 180.
In Osborne v. State, supra, it was held that
 "Under the law of this State sheriffs, police officers and other executive officers are not only authorized, but it is made their duty to arrest and take in custody without warrant any person whom such officer has reasonable ground to believe and does believe, has committed a felony."
It was also held in Haynes v. State, supra, that
 "In giving effect to the rights secured by the organic law for the protection of human life and liberty, courts should consider the substance of things, and should not be controlled by mere matters of form or of technical procedure,"
and that
 "When illegal action by an official in the administration or execution of a valid statute is charged, such illegal action should be duly, properly, directly and distinctly alleged, and if not admitted by demurrer or otherwise, should be duly proven or proof thereof duly offered according to the usual and proper mode of procedure in such cases."
It becomes necessary here to review a portion of the evidence. According to the testimony of defendant Brannen, Chief of Police of Melbourne, he received a telephone message about 11 o'clock on the night of March 1, 1930, from desk sergeant Hubbard of Fort Pierce, stating that a new light grey Ford Sedan used as a demonstration car and bearing a dealer's license tag had just been stolen in Fort Pierce and that it was suspected that two negro men had it and were "headed your way"; that after *Page 846 
receiving the report, he got defendant Dixon, a special night policeman, and both got into Brannen's car; and that soon thereafter they saw a Ford sedan, which in general answered the description given, having two negroes in the front seat and traveling at about 25 miles per hour, approach on the only road from Fort Pierce and turn west toward the Kissimmee highway.
Chief Brannen further testified that when he pursued the fleeing car, it was his belief by the description that he received over the telephone and by colored people having been alleged to have it, that it was the car which had been stolen; that he was in that belief when he instructed Dixon to shoot the right rear tire to stop them; that after the second shot the pursued car began to zigzag and that papers and bottles were thrown out; that one of the bottles found later had had "shine" in it, and that a bottle found in the car had a small amount of "shine" in it; that two of the women including the one wounded had been drinking; that in pursuing the car he could not tell whether it had a dealer's tag on it, as it was dusty and he could not see it well; that he had recovered about 40 stolen cars in his experience and only about two had had the same license plate as reported on before-hand; that the others had different tags on or no license at all.
On cross examination, Chief Brannen testified:
 "The telephone conversation from Fort Pierce didn't say what model. He didn't tell me it was a 1930 model. Said it was a practically new car, four door sedan. He told me it was used there for demonstration purposes and had a dealer's tag on it. * * * At the time I called out about the church and they didn't stop, I was driving and naturally had to be sitting on the left-hand side. Hess Howard, the driver of the other car, *Page 847 
was sitting on the left hand side of his car. That put Dixon between us. Dixon didn't say a word. I did all the talking as far as officers were concerned, at that time. * * *
 "I don't believe that when I got out of the car I used the exact words 'we are looking for a stolen car that's just like this.' I didn't give them any excuse or explanation for my action at all."
The defendant Dixon testified:
 "We followed that car and caught them right in front of the Baptist Church on New Haven Avenue, and pulled along side of the car and told them to stop. He (Chief Brannen) said 'Police officers in this car, stop.' They never stopped. The window on my side was down. I mean it was open, and the window in the negro's car was open, and we told him to stop. The negro turned and looked at him and speeded up. We got pretty close to that car one other time, could not get close enough to head them off. We got to Tidwell's station and he told me to shoot the right tire off that car. I did my best and shot at the tire, and they were traveling at that time fifty or fifty-five miles an hour. When we got down to Hoague's house they pulled over a little bit and we got on them a little bit and I hollered to them to pull over to the curb, and I shot at the tire that second time but hit the car, but the car was swerving back and forth in a reckless manner and you could not do very accurate shooting. They went on past the Lnicoln Hotel, and just about the time we got even with the Lincoln Hotel I fired the last shot, just before they hit that bridge on the other side of the hotel. As they got on to the bridge the tire went flat and they stopped about a hundred feet on the other side of the bridge. * * * I shot with both hands."
The testimony of the State's witnesses differed from *Page 848 
the above materially as to what took place during the pursuit of the car and immediately after they stopped. In substance the State's witnesses testified that Brannen after looking around said "This is not the car;" that it was a rainy night and their windows were up; that Hess Howard, the driver did not hear the officers call to slow down or stop; that as the officers' car approached and he saw the reflection of their lights he ran near the right side of the street to let them pass and when they did not pass he moved nearer the middle of the street and drove faster; that he did not hear the first shots.
Undisputed testimony shows that when they stopped, it was found that one ball fired by the policeman had passed through the right edge of the glass in the back of the pursued car and entered the shoulder of Ola Brown who was sitting on the right side in the back seat and another passed through the metal back of the car and slightly wounded Mary Johnson who was sitting in the middle of the back seat; that the third shot hit the right tire which went flat just before the car stopped.
One of the State witnesses, W. V. Maxwell, a deputy sheriff testified that soon after the occurrence he had a conversation with defendant Dixon in which the latter denied knowing anything about the shooting and stated that he was on duty at the fire station and was not with Chief Brannen during the night. Another State witness, H. C. Kennedy, a justice of the peace of Melbourne, testified that on the morning following the night of the shooting Chief Brannen told him that there was not a thing to the report about him shooting the negroes the night before and that he did not know anything about it; that he was home in bed. *Page 849 
At common law, an arresting officer could lawfully arrest without warrant a person whom he had reasonable grounds to suspect of having committed a felony. 5 C. J. 399, Sec. 30; 2 R. C. L. 447, Sec. 3. Under the statutes of this State, he may arrest without warrant a person who he has "reasonable grounds to believe and does believe" has committed a felony. Section 8323, Compiled General Laws of Florida, 1927.
A motion for a directed verdict was made by defendants and overruled by the court, and the ruling thereon assigned as error. Therefore it becomes necessary for us to decide whether the case should have gone to the jury.
While in some states the question as to whether an arresting officer has reasonable ground to believe and does believe that the person attempted to be apprehended has committed a felony may be a question for the court, as for example if the facts constituting the reasonable grounds for belief of commission of felony upon which the arrest is made are in dispute, the question is for the jury under proper instructions; but if there is no dispute in the testimony about such facts, the question is for the court. Grau v. Forge, 183 Ky. 521, 209 S.W. 369, 3 A. L. R. 642; Wiley v. State, 19 Ariz. 346, 170 P. 869, L. R. A. 1918D 373; 1 Bishop's New Criminal Proc. Sec. 182.
While the facts transmitted by Desk Sergeant Hubbard over the telephone describing the car the subsequent appearance of one in substance answering the description are not in dispute, yet the occurrences along the street during the chase are very much in conflict and these were very carefully submitted to the jury by the evidence and the charges of the court. *Page 850 
The larceny of an automobile in this State is a felony without regard to value, and any persons so stealing may be arrested without warrant by an officer who has reasonable ground to believe and does believe the felony to have been committed. In this case the defendants do not claim self-defense in shooting into the car and wounding one of the occupants, and they admit that they were mistaken as to the identity of the car and that no arrest of the occupants was made. It also appears that the occupants were pursued through mistaken identity and that as a result of either bad aim or negligence, the two first shots from the officer's pistol passed through the upper back of the car instead of the tire and wounded two occupants of the rear seat.
Arresting officers are often called upon to perform very dangerous, delicate and responsible services in the apprehension of criminals and they must often act on the spur of the moment when there is but little or no time to form accurate judgment, and necessarily they, like other human agencies, may often misjudge as to just where the zone of their legal authority ends and the personal rights of citizens begin. In this situation, if the officer through error of judgment, mistakes the facts and exceeds his authority, and there is coupled with it any appreciable degree of negligence or carelessness, causing personal injury to another, he becomes accountable for those acts which transgress the guaranteed rights of citizens.
Conceding for the purposes of this discussion only, that defendants had authority to make the arrest of the occupants of the pursued car without a warrant, such authority included the lawful power to use such force as they then had reasonable cause to believe, and did believe, was necessary to make the arrest; but it included *Page 851 
the right to use no more, and the use of any greater force was beyond the scope of their authority, unauthorized and without justification. Here too, the measure of necessary force is generally considered to be that which an ordinary prudent and intelligent person, with the knowledge and in the situation of the arresting officer, would have deemed necessary. See 5 C. J. 424, Sec. 59; 1 Bishop's New Criminal Procedure, Sec. 159; State v. Boggs, 87 W. Va. 738, 106 S.E. 47, 18 A. L. R. 1360, and notes 1368.
The amount of force which an officer may lawfully use in making an arrest is so much as is necessary to accomplish his object; and where he is charged with exceeding that limit, the jury must judge of the necessity and not the officer. If the amount used is more than the occasion requires, he is criminally liable for the excess. Patterson v. State, 91 Ala. 58, 8 So. 756.
In this connection it may be appropriate to state that it is a matter of common knowledge that there are many light grey Ford sedans on the highways both day and night, and this fact would necessarily make it more difficult as well as more essential to be sure of the identity of the car pursued.
The authority of an arresting officer to use force in making arrests of known persons for felony with a warrant, is very different from that which he has in making arrests of unidentified persons without a warrant. In the former case, having due regard to the safety of others, he may use such force as is reasonably necessary to accomplish the arrest, even to the wounding of the felon, while in the latter case he acts upon his own reasonable ground of belief, and is required to exercise caution, and, in the event of mistaken identity, if injury results, he may be liable for any lack of *Page 852 
reasonable and due caution in identifying the person as well as for any injury he may inflict upon such person or others as a result of his efforts. If reasonable grounds exist for the belief and no excessive force is used nor injury results he is not liable although no crime of any sort has been committed. Voorhees, The Law of Arrests, 113, 114; 2 R. C. L. 446, Sec. 3.
All the facts are not admitted as to the grounds furnishing the basis for belief by the officers that a felony had been committed by the persons pursued and it became the legal duty of the jury under the charges of the court to determine whether or not the defendants acted with the proper degree of care in identifying the pursued car and whether they exceeded their authority in stopping the car by shooting into it in the night time in the manner established by the evidence.
It has long been the rule in this State that a verdict of a jury will not be disturbed by the appellate court when there is evidence to support it and the trial court has concurred by denying a motion for new trial and where there is no showing that the jury must have been improperly influenced by considerations outside of the evidence. Bexley v. State,59 Fla. 6, 51 So. 278; Wallace v. State, 76 Fla. 175, 79 So. 634.
Finding no reversible error, the judgment of the trial court is affirmed.