WIGGINTON, Chief Judge.
Plaintiff sued for damages resulting from the death of her decedent allegedly caused by the negligence of the defendant gas company. To the complaint defendant filed defenses of general denial, contributory negligence and assumption of risk. The jury returned a verdict in favor of defendant upon which judgment was entered. On denial of plaintiff’s motion for new trial, she has appealed.
The record reveals that plaintiff’s decedent, a former city manager of Ocala and longtime employee in the City’s sanitary department, met his death from an explosion which occurred in a sewer lift station during a periodic inspection and testing of the mechanical equipment located therein. There is ample evidence in the record from which the jury could have lawfully concluded that the sole proximate cause of decedent’s death resulted from negligence of the City of Ocala, and not from any negligence on the part of defendant. An examination of the trial proceedings reveals the following:
“(At 12:00 o’clock p. m. the jury returned to the courtroom and reported as follows):
“Foreman: Your Honor, we would like for you to reread to us the part of your instructions in regard to negligence on the part of a third party.
“The Court: I will read you what I think is the only charge given on that subject and if that’s not it or you want any further charges you can let me know. ‘The plaintiff has the burden of proving not only that her husband’s death was the result of the negligence of someone other than himself but must also prove that the negligence, if any, which caused his death, was the negligence of the defendant gas company. For example, if you find from the evidence that the death was the result of the negligence of any third party, and you find no negligence on the part of the defendant gas" company, you must return a verdict of not guilty.’ Was that the one ?
“Foreman: Yes, sir.
“The Court: Was there any other one you wanted?
“Foreman: No, sir.
“(Thereupon the jury retired)”
And the following when the jury later returned:
“The Court: Have you reached a verdict ?
“Foreman: Yes, sir. May I say a few words as to how we arrived at this verdict ?
“The Court: I don’t see that it’s out of order but maybe you had better say it after we read the verdict.
“Clerk: (reads the verdict, which finds the defendant not guilty)
“The Court: I want to say the Court appreciates very much the interest you have taken in this case.
“Foreman: In arriving at our verdict of not guilty we feel Mr. Clark was killed as a result of the negligence of a third party.”
From the foregoing it is apparent that the jury found and concluded upon proper charges of the court that the sole proximate cause of decedent’s death was the negligence of a party other than the defendant. Under the defense of general denial, the jury could have lawfully rendered its verdict in defendant’s favor. Since the evidence relating to defendant’s negligence was in sharp conflict, and that conflict was resolved by the jury in favor of defendant, the trial court was correct in denying plaintiff’s motion for new trial. Under these circumstances this court is not justified in disturbing the jury’s verdict, particularly when the able trial judge who heard the evidence refused to set the verdict aside and grant a new trial.
*393 Appellant earnestly contends that the trial court committed harmful error by refusing to withdraw from the jury’s consideration the defense of assumed risk. It is asserted that the failure of the trial judge to grant plaintiff’s motion made at the close of all evidence to withdraw this issue tended to confuse the jury and resulted in a miscarriage of justice. As shown above, it seems clearly apparent that the jury based its verdict on its finding that the sole proximate cause of decedent’s death was the negligence of the City of Ocala, and not the defendant gas company. This being so, it is equally apparent that the jury was neither confused by nor seriously considered the defense of assumption of risk.
The evidence, viewed in a light most favorable to defendant, reveals that decedent, during the course of his employment by the City of Ocala, acquired intimate knowledge as to the operation of the city sewer system. He was familiar with the electric motors which powered the pumps located in the lift stations. He knew that sparks emitted from the motors might ignite any accumulation of gas in the lift station and cause an explosion. He had full knowledge that three explosions had occurred at the lift station in question about one year prior to the fatal explosion which resulted in his death. It was never definitely determined what caused any of the three explosions, although the evidence strongly indicates that they necessarily resulted from an accumulation in the station of either methane (sewer) or liquid petroleum gas. We cannot agree with appellant that the burden rested on defendant to prove that decedent knew the prior explosions resulted solely from an accumulation of liquid petroleum gas before plaintiff could be barred from relief by the defense of assumed risk. The evidence tending to prove that the fatal explosion resulted from an accumulation of liquified petroleum gas in the station is in conflict. Regardless of what type of gas caused the explosions, it seems clear from the evidence that plaintiff’s decedent knew that prior explosions had occurred, and that their origin was accumulated explosive gases of some nature. The jury could have concluded from the evidence that decedent knew or should have known that subsequent explosions at this lift station might occur unless precautionary measures with which he was familiar were observed. For several weeks prior to the fatal explosion the odor of liquified petroleum gas was prevalent in the vicinity of the station. Whether the existence of this odor was known or should have been known to the decedent was a question for the jury. Following the third prior explosion the lift station was partially destroyed by fire and decedent was advised to install explosive proof electrical equipment in the station at the time it was repaired. Despite these admonitions decedent issued instructions that non-explosive proof appliances be installed, which appliances he knew or should have known might emit sparks that would ignite any accumulated gas in the station, which ignition would inevitably be followed by another explosion. The evidence further reveals that under the foregoing circumstances decedent entered the lift station for the purpose of starting and testing the electric motor located therein without first disconnecting the master switch located on the outside of the station, the disconnection of which was a recommended safety precaution. When the electric motor inside the station was started, the fatal explosion occurred.
From the foregoing evidence, together with other pertinent facts revealed by the record, the jury could have lawfully concluded that decedent, under the circumstances shown by the record, voluntarily exposed himself to the known risk of the explosion which caused his death.[1] It follows that the trial court did not commit *394 error in refusing; to withdraw the defense of assumed risk from the jury’s consideration. The judgment appealed from is accordingly affirmed.
Affirmed.
CARROLL, DONALD, J., concurs.
STURGIS, J., dissents.

. City of Williston v. Cribbs, Fla.1955, 82 So.2d 150; Byers v. Gunn, Fla.1955, 81 So.2d 723; Bartholf v. Baker, Fla. 1954, 71 So.2d 480.