154 So.2d 327 (1963)
Joseph G. SAN FRATELLO, Appellant,
v.
STATE of Florida, Appellee.
No. 3405.
District Court of Appeal of Florida. Second District.
June 5, 1963.
*328 John S. Berry, Tampa, for appellant.
Richard W. Ervin, Atty. Gen., Tallahassee, and Robert R. Crittenden, Asst. Atty. Gen., Lakeland, for appellee.
SMITH, Judge.
Joseph G. San Fratello was informed against, found guilty by a jury and sentenced for the crimes of forgery and uttering a forged instrument. We affirm.
Upon returning to the United States, an Air Force sergeant started on a drinking spree in Tampa. He met two women who managed to purloin from him a number of travelers checks which the sergeant had not endorsed. The women testified that they had delivered the travelers checks to San Fratello on the agreement that he would arrange to get the checks cashed and split the proceeds with them. The evidence shows that San Fratello's co-defendant, Gullo, cashed one of the travelers checks at a Tampa bank.
San Fratello first contends that the court erred in denying his motion to quash the Information on the grounds (1) that the Information did not have copied upon it in printed words the travelers checks in question, but instead recited that a photostatic copy was attached and made a part thereof; and (2) that the photostatic copy attached was illegible. The original Information has been certified to us pursuant to Florida Appellate Rule 6.9, subd. e, 31 F.S.A. We find that the photostatic copy attached was not so illegible as to make the Information so vague that the defendant would be embarrassed in preparing his defense or that the defendant might be subjected to a new prosecution for the same offense. The vagueness of the copy could have been corrected by a bill of particulars, but no such motion was made. See State v. Bruno, Fla. 1958, 107 So.2d 9.
In the course of the presentation of the State's case, detective Nail testified that, on the day of the alleged crimes he was driving an automobile past the front of the Central Bank of Tampa; that he was driving at a rate of about twenty miles per hour; that he did not stop; that he saw the defendant, Joseph San Fratello, sitting in the front right-hand seat of an automobile parked directly in front of the bank; and that he saw another person sitting in the car with San Fratello, but that he did not then know the other person. Later in the course of presenting the State's case, evidence was developed to the effect that this other person was the co-defendant, Gullo; and that Gullo left the automobile, went into the bank and received cash in exchange for the travelers check alleged to have been forged and uttered. The foregoing evidence was vital to the prosecution, for the proof of identity of San Fratello and the proof that he was with Gullo at the approximate time that the alleged crimes were *329 committed were necessary elements of the State's case. These facts were never admitted by the defense; nor were they proven otherwise. On cross-examination, defense counsel questioned detective Nail closely as to whether or not he could, and in fact did, recognize San Fratello. In the course of this intensive cross-examination, the detective was asked if he stopped next to Mr. San Fratello's car, to which he replied: "No." He was then asked: "You had no occasion to stop, did you?" Detective Nail replied: "I recognized him. I had had occasion to meet him on other circumstances when I arrested him for armed robbery." At that point, San Fratello's counsel moved for a mistrial on the grounds that: "* * * this officer who has had seven and a half years' experience with the Tampa Police Department in the Detective Bureau has come here before a jury and has blurted out something that was absolutely unasked for or uncalled for. He has made a statement before this jury which can do nothing but inflame the minds of the jury and prejudice this defendant in the eyes of the jury. I don't care how much instruction this Court gives to this jury, it cannot be erased from their minds. * * *" The court denied the motion for mistrial and instructed the jury to disregard the answer given by the witness in response to the question by defense counsel. The court stated further that detective Nail's statement was highly improper and should not be considered by the jury in any manner in this case.
The defendant contends that the detective's remark was so harmful and prejudicial to the defendant that the court erred in denying his motion for mistrial, citing Mann v. State, 1886, 22 Fla. 600; Roberson v. State, 1898, 40 Fla. 509, 24 So. 474; and Boyett v. State, 1928, 95 Fla. 597, 116 So. 476. It is noted that in each of the cases cited, it was held that the trial court erred in admitting into evidence, during the direct examination by the State and over objection of the defendant, the testimony of the State's witness that the accused had committed other crimes not connected with the offense for which he was being tried. The distinctions here are obvious when it is noted that (1) the statement objected to in the case at bar was made on cross-examination, defense counsel testing the State's witness as to his ability to identify the defendant under the circumstances; (2) the court below struck the reply and instructed the jury to disregard it; and (3) the witness here did not state that the defendant had been convicted or that he committed the other crime, but only that the witness recognized the defendant because he had previously arrested him for the crime of armed robbery. In addition, the principles enumerated in the foregoing decisions have been materially modified in Talley v. State, 1948, 160 Fla. 593, 36 So.2d 201, Singer v. State, Fla. 1959, 109 So.2d 7; and Johnson v. State, Fla. 1961, 130 So.2d 599. The exclusionary rule that evidence of arrest, incarceration or conviction for other offenses is not admissible against an accused is not one of such unqualified application as to prohibit absolutely and for every purpose the receiving of any evidence which may reveal the existence of such fact. The general exclusionary rule should be strictly enforced, in all cases where applicable, because of the prejudicial effect and injustice of such evidence, and should not be departed from except under conditions which clearly justify such a departure. Evidence of other offenses may be received if relevant for any purpose other than to show mere propensity or disposition on the part of the accused to commit the crime. Proper evidence to identify the accused as the person who committed the crime charged is not to be excluded because it proves or tends to prove that he was arrested, incarcerated, or convicted of another and independent crime. In the latter instance, to bring evidence within this exception, such proof of identity must be necessary where identity is an issue, and it should be shown that identity cannot be clearly shown without such evidence. 22A C.J.S. Criminal Law *330 §§ 683, 684; Williams v. State, Fla. 1960, 117 So.2d 473.
When the Air Force sergeant was questioned as to whether or not he had talked with anyone about the facts in the case, he replied that, among others, he had talked to the State's Attorney. He said that on the morning of the trial the State's Attorney: "* * * told me he would show me where to go to and all that, sir." The sergeant testified that all of the witnesses were in the witness room and that the State's Attorney talked with all of the people in the witness room in the presence of each other. One of the women who testified against the defendant was also questioned in regard to the State's Attorney allegedly "going over the facts of the case with the witnesses." From the testimony of this witness it appears that the State's Attorney merely asked the witnesses if they remembered what they had said in their signed statements. At the conclusion of the presentation of the State's case, defense counsel moved the court to declare a mistrial upon the grounds that:
"[I]t has been brought to light that the State Attorney has questioned all of the witnesses concerning their testimony in the presence of one another, where these witnesses have the benefit of hearing the testimony of each other, and, certainly, in circumstances such as these, * * * it would be most prejudicial to the rights of the defendant on charge here, Mr. San Fratello, to have these witnesses have repeated opportunity to hear one another's testimony so that their testimony possibly might fall in line with each other."
The circumstances shown in the record do not support the grounds stated in the motion. The record here does not show what the State's Attorney talked about, other than telling the witnesses where they should go when called and asking them if they remembered what they had said in their signed statements. The record is silent as to whether this "discussion" occurred before or after the witnesses had been placed under the Rule. This judgment comes here under a presumption of correctness. The burden is on the defendant to show by the record that reversible error occurred. The granting or refusing to grant a motion for mistrial is largely discretionary with the trial court. Garcia v. State, Fla.App. 1962, 142 So.2d 318.
Numerous instructions were requested by the defendant, and the court refused to give several of them. The defendant contends that the court erred in failing to give his requested instructions. In response, the State contends that, neither at the trial, nor in his motion for new trial, nor in his assignments of error, did the defendant individually designate and specify which of his requested instructions he contends should have been given. The record shows that the defendant entered a general objection to the court's failure to give the instructions requested by the defendant. The State urges that, under these circumstances, the defendant is bound by the rule that if any one of the requested instructions is found to have been properly refused, then this Court must find that there was no error below in denying the remainder of the requested instructions. This rule was stated in Dixon v. State, 1931, 101 Fla. 840, 132 So. 684, and in numerous other decisions of the Supreme Court prior to 1931. It is provided in § 918.10(4), Florida Statutes, F.S.A., that the defendant may not assign as error the failure to give an instruction unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds of his objection. Florida Appellate Rule 6.16, subd. a and § 924.32(1), Florida Statutes, F.S.A., provide that this Court shall review all instructions to which an objection was made and which are alleged as a ground of appeal. Our research has not disclosed any decisions following the rule stated in Dixon v. State, supra, subsequent to the enactment of the above statutes and promulgation of the above rule. We conclude that these *331 statutes and this rule have abrogated the harsh principle enumerated in the line of cases terminating at Dixon v. State, and that this Court must review each of the instructions requested and refused, to all of which the defendant made a general objection.
We find that the instructions requested and refused, when considered in connection with the instructions which were given by the court, were properly refused. The law applicable to this case appears to have been fairly presented to the jury. The court's instructions to the jury adequately stated the material elements of the offense charged; the court defined each offense and covered each material element of each offense. The instructions given were neither misleading to the jury nor prejudicial to the accused. Such instructions are sufficient. Askew v. State, Fla. 1960, 118 So.2d 219.
The judgment is affirmed.
ALLEN, Acting C.J., and WHITE, JOS. S., Associate Judge, concur.