ROBERTS, Justice.
This is a direct appeal from a verdict and judgment convicting appellant of murder in the first degree without recommendation to mercy. Jurisdiction of the appeal attaches under Section 4(2), Article V, Florida Constitution, F.S.A.
The victim of the homicide was a young college student who was working as a taxicab driver during his summer vacation. He was found in his cab, fatally wounded and covered with blood, not long after a passenger, later identified as the appellant, had called for a cab and had been picked up by that driven by the victim. From evidence adduced by the State, the jury had the right to find that this was the last fare carried by the victim before his death. Blood stains on the appellant’s shirt and on money found hidden in his shoe after he was arrested were tested and found to be Type “A”, the same as that of the victim. Evidence heard by the jury was ample to show that the appellant had Type “O” blood.
The appellant pleaded not guilty to the charge made against him by the Grand Jury and made no statements or admissions of guilt either before or during the trial. (He did not take the stand in his own defense.) At the trial the appellant adduced evidence tending to show that the blood stains on his clothing could have come from a person other than the victim (although the blood type of such other person was not shown) but made no real attempt to establish an alibi as to his whereabouts at about the time of the murder. On this appeal, he does not directly question the sufficiency of the evidence to support his conviction. He does, however, question the legality of his arrest and the admissibility of the evidence taken from his person following his arrest. He also attacks the indictment filed against him on the ground that it was returned by an illegally constituted Grand Jury and contends that fundamental error was committed during his trial in respects referred to hereafter.
As to the legality of his arrest without a warrant, the appellant first contends that the arrest made by the sheriff was based on mere suspicion and not on probable cause. This contention is without merit. The cab containing the body of the victim was discovered about 9:15 or 9:20 p. m., and the police were notified at 9:28 p. m. The sheriff was informed that a Negro male, dressed in dark pants and a white shirt, with a bandage on his left arm, had called the cab at Ashmore’s Drug Store at approximately 8:50 p. m. He was also informed that a colored male, about five feet and seven inches tall, wearing a white shirt and dark pants, had been seen about a block from where the cab was found, walking hurriedly, counting money. When apprehended, at about five o’clock the next morning, the appellant was wearing dark pants and a white shirt, had a bandage on his left arm, and answered the same general physical description as that of the Negro seen walking in the vicinity of the cab. These circumstances unquestionably meet the “reasonable man” test for probable cause. See Nelson v. State, 1966, Fla.App., 188 So.2d 353; Rogers v. State, 1947, 158 Fla. 582, 30 So.2d 625.
It is also contended that the arrest was illegal because the appellant was not informed of the charge against him at the time he was taken into custody. It was shown that immediately after he was arrested the appellant was told not to make a statement and that he was informed of the cause of his arrest soon after his arrival at the Sheriff’s office. The arresting officers had probable cause to believe that appellant had murdered the cab driver, and the delay in advising, him of the cause of his arrest does not appear to have prejudiced him in any way whatsoever. We find no reversible error here. See Flowers v. State, 1943, 152 Fla. 649, 12 So.2d 772; City of Miami v. Nelson, 1966, Fla.App., 186 So.2d 535.
The appellant next contends that the failure to take him before a committing *321 magistrate until some twenty-seven days after his arrest was also a factor contributing to his “illegal” arrest. This contention can be given short shrift. Clearly, the delay in taking him before the committing magistrate does not invalidate what was otherwise a legal arrest. And it is well settled that the rule of McNabb v. United States, 318 U.S. 332, 63 S.Ct. 608, 87 L.Ed. 819 — that “due process” requires the prompt presentation of an accused before a committing magistrate in federal prosecutions — has not been extended to state prosecutions. See Milton v. Cochran, 1962, Fla., 147 So.2d 137. Moreover, the McNabb rule has been said to be “in 'the nature of a rule to determine the admissibility of evidence rather than a pronouncement of an organic essential.” Leach v. State, 1961, Fla., 132 So.2d 329. In the instant case there was no question concerning the admissibility of a confession since the appellant made none. We find no harmful or reversible error in the delay complained of. See Young v. State, 1962, Fla., 140 So.2d 97; Singer v. State, 1959, Fla., 109 So.2d 7; Romanello v. State, 1964, Fla.App., 160 So.2d 529.
Another assignment of error relating to the arrest has to do with the trial judge’s submitting to the jury the question of whether there was “probable cause” for the arrest without a warrant. It is contended that the legality of an arrest when the facts are not in dispute is a question for the court and not for the jury, and that “to allow hearsay testimony of a prejudicial nature relating solely to the legality of the arrest to go to the jury is reversible error.” There is no merit to this contention.
In Dixon v. State, 1931, 101 Fla. 840, 132 So. 684, relied upon by appellant, this court said that
“ * * * if the facts constituting the reasonable grounds for belief of commission of felony upon which the arrest is made are in dispute, the question is for the jury under proper instructions; but if there is no dispute in the testimony about such facts, the question is for the court.”
In that case the defendant police officers were charged with culpable negligence and aggravated assault arising out of their shooting into an automobile thought to have been stolen in order to apprehend the suspected thief. The trial judge submitted to the jury the question of whether reasonable grounds existed for the arrest without a warrant, and this court held that there was no error in so doing as against a contention on the appeal that a verdict should have been directed for the defendants. The other case cited by the appellant in support of his contention, City of Miami v. Nelson, 1966, Fla.App., 186 So.2d 535, also involved alleged misconduct on the part of police officers in the use of excessive force in making an arrest. In a civil suit for damages filed against the City of Miami, the trial judge submitted to the jury the questions of probable cause and use of excessive force and the jury returned a verdict in favor of the plaintiff. On appeal, the appellate court held that the undisputed evidence showed that the police officers acted in good faith and used no excessive force and that the trial judge should have directed a verdict in favor of the defendants.
The facts of the instant case are different. Here, the validity of the arrest is relevant to the question of the admissibility of the evidence taken from the appellant following his arrest. In a pre-trial order on appellant’s motion to suppress this evidence because of the alleged unlawful arrest, the trial judge ruled that the undisputed evidence showed that probable cause existed for the arrest of the appellant. Out of an excess of caution and apparently because counsel for the appellant indicated that there was still some dispute as to the existence of probable cause, the trial judge submitted the question to the jury. If this was error, it was certainly not harmful to appellant. Moreover, the persons who observed the appearance and actions of the appellant and supplied the sheriff with the *322 information leading to the appellant’s arrest, repeated that information under oath to the jury at the trial without objection by the appellant. So the appellant’s contention that reversible error was committed in allowing “hearsay testimony of a prejit-dicial nature relating solely to the legality of the arrest to go to the jury” is manifestly without merit.
The appellant’s attack on the Grand Jury that returned the indictment against him is based on the following facts: It has for many years been the custom for the Supervisor of Elections of Leon County, before submitting the list of qualified voters to the County Commissioners for their use in preparing the master jury list, to delete therefrom those persons who are exempt or disqualified by law, Sec. 40.07-40.08, Fla.Stat., F.S.A., from jury service. These are ministers, professors, teachers, students, lawyers, judges, people over the age of sixty-five, policemen, firemen, people in service, and persons employed by one of the news media. The list is also purged of those persons adjudged mentally incompetent or who have moved away or died. The reason for the deletion of the names of those exempt or disqualified by statute is that Leon County, containing the state capítol, two appellate courts, a federal district court, several institutions of higher learning, and a concentration of news services, has among its registered voters an unusually large percentage of those exempt from or disqualified for jury service. For example, it was shown that in 1966 in one precinct there were 446 registered voters whose names began with A, B or C, of which 191 were males and 255 were females. Of the 191 males, all except 40 would have been exempt or disqualified for jury service. (Before 1967 only those females who registered for jury service were subject to call, so that no figures were available in 1966 as to the number of exempt or disqualified female voters.) As a matter of practical necessity, some screening process is required to avoid having a master jury list for Leon County with a high percentage of exempt or disqualified persons on the list, which could only result in an insufficient Grand Jury list and a petit jury venire that would soon be exhausted. (We note, parenthetically, that Leon County does not have the Jury Commissioner system of jury selection, in which only those persons filing written claims of exemption are deleted from the list by the Jury Commissioners. See Secs. 40.09-40.12, Fla.Stat., F.S.A.) The County Commissioners of Leon County could have done the prescreening themselves; and the deletion by the Supervisor was a purely ministerial or clerical duty, requiring no exercise of discretion on her part. This being so, the charge of “unlawful delegation of authority” made here by the appellant cannot be sustained. Cf. Hoyt v. State, 1960, Fla., 119 So.2d 691.
It is not contended that the members of the Grand Jury that returned the indictment against the appellant were not competent and qualified jurors, nor is it shown that the Grand Jury list from which their names were drawn by lot did not represent a fair cross-section of the community. The appellant cannot seriously contend that he has a right to have a member of a class exempt from jury duty serve on the jury by which he is indicted or tried; and there is nothing to show that the percentage of Negroes whose names were on the Grand Jury list in 1966 (over 5% of the registered voters) was so disproportionate to the number of eligible registered voters—that is, those not exempt or disqualified—as to indicate a planned discrimination against members of his race in selecting the names to be placed on the master jury list. The jury list need not be a perfect mirror of the community nor is it required to reflect accurately the proportionate strength of every identifiable group in the community. See State v. Demetree, 1968, Fla., 213 So.2d 709, opinion filed July 17, 1968, and cases cited.
It was shown that each member of the County Commission submitted names *323 of prospective jurors from his precinct and that all of the names so submitted were approved by the Commissioners as a whole. We have the view that the County Commissioners fully complied with their duty to select personally for the jury list those persons “possessing the prescribed qualifications according to their best information and belief.” Sec. 40.02, Fla.Stat, F.S.A. Accordingly, the appellant’s contention in this respect cannot be sustained.
The appellant has also assigned as error the denial of a motion for continuance made in his behalf at the trial when the State added nine witnesses to the list of those previously supplied to counsel for appellant. The paucity of argument under this assignment could be interpreted as an abandonment; nonetheless, we have read the pages of the record to which we were referred and have concluded that the trial judge did not err in refusing the motion. The witnesses were mostly police officers through whose hands various exhibits had passed. The trial judge allowed counsel for the appellant all the time he needed to interrogate the witnesses before beginning the trial of the case. We find no error here.
The appellant’s Leon County Blood Bank card was admitted in evidence over his objection and this is assigned as error here. The card was found on his person and showed that he had Type “0” blood. Other State’s witnesses testified that the appellant had a bandage on his left arm and that the left sleeve of his shirt was stained with Type “O” blood. From this evidence the jury had the right to infer that appellant’s blood was Type “O”. The fact of the presence of a Blood Bank card, showing Type “O” blood, on appellant’s person was not hearsay evidence; and this fact was material and relevant in corroboration of the testimony of the State’s witnesses and the reasonable inferences therefrom relating to appellant’s blood type. Cf. Royal v. State, 1936, 127 Fla. 320, 170 So. 450.
The appellant complains also of the admission into evidence of a knife, the blade of which was found on the front seat of the cab and the handle of which was found nearby. Contrary to the statement of appellant that there was no evidence connecting him with the knife, the record shows that a State’s witness testified that he had found a knife similar to the murder weapon (an old rusty fish knife with a .plastic handle) some two days before the murder and had given it to the appellant. This assignment of error is therefore without merit.
The appellant argues also that the trial judge’s “failure to charge on the effect of blood groupings as a means of excluding identity but not for establishing identity, was error.” He cites no Florida case in support of this proposition and our independent research has revealed none. The two decisions of other courts cited by him, State v. Thomas, 78 Ariz. 52, 275 P.2d 408, and Kemp v. Government of Canal Zone (5th Cir.1948) 167 F.2d 938, were concerned with the question of the admissibility of such evidence and not with jury instructions relating thereto, and are not authoritative here. Here, the experts who made the blood tests and testified to finding both Type “A” and Type “O” blood stains on appellant’s shirt made very clear that the typing of blood was conclusive only for the purpose of exclusion — that is, that Type “A” blood could not have come from a Type “O” person — and that it was not possible to say conclusively that blood of Type “A” had come from a particular person having Type “A” blood. The trial judge gave the jury a general charge concerning the testimony of expert witnesses and the weight to be given their evidence but denied the requested charges relating specifically to the probative value of blood groupings. We agree that the requested instructions would have given undue prominence and weight to this evidence and hold that the instructions were properly refused.
*324 Finally, the appellant makes a broad general charge of denial of his constitutional rights and states that he was “held incommunicado and denied counsel for ninety days after his incarceration.” The record affirmatively shows that, as early as August 19, when appellant was brought before the committing magistrate, he stated to the judge that his wife was obtaining the services of an attorney and he preferred to wait until he had his own attorney before having a preliminary hearing. We find nothing in the record to indicate that appellant was denied the right to see his wife and his mother — or even that they made an effort to see him. It does appear that his aunt, with whom he lived, visited him in jail. The appellant made no incriminating statements during his incarceration without counsel, nor after he had the assistance of court-appointed counsel, nor at the trial. He was identified in a line-up shortly after his arrest by several witnesses at a time when he had no counsel. The record shows that at that time he was advised of his right to have a lawyer present and was asked if he understood those rights, and he answered in the affirmative. The line-up was conducted in a fair and impartial manner. In short, we find no denial of the appellant’s constitutional rights in any way whatsoever.
We have carefully considered all assignments of error and, as required by Sec. 924.32(2), Fla.Stat., F.S.A., have reviewed the evidence to determine if the interests of justice require a new trial. We have concluded that the assignments of error are not well taken and that the evidence abundantly supported the verdict and judgment. Accordingly, the judgment appealed from is
Affirmed.
ERVIN, C. J., and DREW, THORNAL, THOMAS (Retired), CALDWELL (Retired) and ADAMS (Retired), JJ., concur.