250 So.2d 900 (1971)
Clark W. JENNINGS, Appellant,
v.
CITY OF WINTER PARK and Insurance Company of North America, a Corporation, Appellees.
No. 70-309.
District Court of Appeal of Florida, Fourth District.
August 2, 1971.
*901 S. Victor Tipton, Orlando, for appellant.
Monroe E. McDonald, of Sanders, McEwan, Mims & McDonald, Orlando, for appellees.
PER CURIAM.
On 20 January 1969, the plaintiff, Clark W. Jennings, a sixty-eight-year-old Winter Park lawyer, filed a complaint against the City of Winter Park in which he alleged that the City was liable to him on several theories including assault and battery by use of excessive force in effecting his arrest, negligence, and false imprisonment. The City's answer denied the material allegations, the cause went to trial, and a jury verdict was returned for the defendant City. Final judgment was entered on 28 January 1970; motion for new trial was filed on 30 January 1970; an amendment to the motion for new trial was filed on 22 February 1970, and an order denying the motion for new trial was entered on 10 March 1970. The plaintiff appeals from the final judgment.
Mr. Jennings' version of the arrest is as follows: On 3 April 1968, Officer Briscoe of the Winter Park Police Department drove up behind the plaintiff after he allegedly made an improper left turn. Briscoe started to give plaintiff a lecture, but plaintiff told Briscoe he did not want a lecture and to either give him a ticket or allow him to go about his business. At this point Briscoe wrote a ticket and rammed it, along with a machine which contained the ticket, into the plaintiff's ribs and instructed the plaintiff to sign the ticket. The plaintiff refused to sign the ticket, whereupon Briscoe threw the machine down and grabbed plaintiff from the back and pulled up on his trousers. Briscoe then hit the plaintiff in the back of the head twelve times with his fist. The plaintiff jerked away from the officer and turned around. As plaintiff turned, the officer squirted four blasts of mace in plaintiff's face at a distance of three to six inches. The officer then grabbed the plaintiff, threw him in the back of the police car, and drove to the station. When the plaintiff and Briscoe arrived at the police station another officer came up to the plaintiff and grabbed him by the belt and coat collar and hit him again in the back of the head and continued to hit him in the back of the head all the way into the police station.
The arresting officer gives the following version of what occurred. He attempted to give the plaintiff a verbal warning with respect to his traffic violation. As the officer attempted to give the warning, the plaintiff said:
"`Now, you listen. I am sick and I am tired and I don't need a lecture from the likes of you. If you are going to write me a ticket, write me one; if not, shut up and let me get out of here.'"
The officer then wrote the ticket out and asked the plaintiff to sign it. The plaintiff refused to sign the ticket and started to walk away. The police officer then advised the plaintiff that he was under arrest and put his arm on Jennings' arm and said, "`You will have to come with me.'" At this point Mr. Jennings jerked away and said, "`You are not placing me under arrest. Take your dirty hands off me.'" The plaintiff then said he was going to his office and started across the street. At *902 this point the police officer ran to catch up with the plaintiff and shot him with one three-second blast of mace from a distance of about three feet. The officer then took the plaintiff by the arm and guided him to the patrol car. The officer denied grabbing the plaintiff by the collar and belt and denied using any more force than was necessary to effect the arrest.
The plaintiff's first point is stated in his brief as follows:
"The trial judge erred in not granting a new trial on the ground that the verdict was against the law or the evidence or the manifest weight of the evidence."
The argument under Point I proceeds on three theories. First plaintiff says that there was no legal justification for using mace because of its painful and disabling effects. We take this to be a contention that the use of mace was, as a matter of law, excessive force.
Our review of the record indicates that the only pertinent testimony before us is that of Officer Briscoe (summarized above), the plaintiff, and his doctor, one George O. Emerson. Dr. Emerson testified that the plaintiff first came to see him in September 1968. (The arrest occurred in April of 1968.) The doctor stated that Mr. Jennings had excessive watering in one eye, a sticky substance in his eyes, and cloudiness on the cornea. He related the watering and the cloudiness on the cornea to mace. On the other hand, the doctor testified that Mr. Jennings' vision was 20-20. The doctor's testimony revealed that he had had no personal experience with mace, but had read some literature on it the exact nature of which is not revealed by the record. The doctor testified that the watering and discharge from the eyes may continue for some time, but he did not know how long. No other medical testimony was included in the record on appeal, although the transcript reveals that other doctors did testify.
Mr. Jennings testified that the immediate result of the mace was painful and that he had subsequently had trouble focusing his eyes and difficulty with his eyes watering. However he continues to drive an automobile and fly his own personal aircraft.
It appears to us, notwithstanding the apparent effect of the mace, that the jury reasonably might have concluded from all the evidence  including that of plaintiff's age and apparent belligerence  that the force employed in effecting the arrest was not unreasonable. In fact, the jury may reasonably have concluded that had mace not been used, a more dangerous force might have been required to bring about the arrest.
The second contention under Point I is that the City was negligent as a matter of law because neither Briscoe nor any other officer advised Mr. Jennings that he should wash his eyes out after the exposure to mace. Briscoe's testimony indicates that he did not advise Mr. Jennings to wash his eyes out. Briscoe stated that he had no instructions with respect to washing one's eyes out after the use of mace. Officer Joel (another of defendant's officers) testified that he did not tell the plaintiff to flush his eyes out, although he (Joel) knew that this was a proper treatment and should be done as soon as possible. However, insofar as the record on appeal is concerned, whatever consequences might have resulted from the macing are not shown to have been avoidable by an immediate eye wash. Furthermore, Mr. Jennings' own testimony indicates that he washed his eyes out after he left the police station. It, therefore, appears that the jury reasonably could have found either (a) the plaintiff's knowledge was such he did not need the warning or (b) the policemen's failure to warn Jennings to wash his eyes out was not causally related to his alleged injury.
*903 Finally under Point I the appellant argues that there was no legal excuse for holding him in the city jail for the period which he was detained. The plaintiff states in his brief that the records of the City reflect that he was held for one hour and five minutes. The plaintiff testified that he was held for a longer period of time  from two to two and one-half hours. Accepting the evidence in the light most favorable to the jury verdict, the question becomes whether or not a detention of one hour and five minutes is such that the City was liable as a matter of law for false imprisonment. Civil liability for false imprisonment, where one's initial arrest was lawful, depends on a showing that the detention was unreasonable and unwarranted by the circumstances. City of Miami v. Albro, Fla.App. 1960, 120 So.2d 23, 26, and Winn & Lovett Grocery Co. v. Archer, 1936, 126 Fla. 308, 171 So. 214, 218. It would appear that the jury reasonably could have reached the conclusion that a restraint for a period of one hour and five minutes was not unreasonable for the purpose of "booking" the plaintiff.
We understand it to be the duty of an appellate court to exercise considerable caution and restraint in reversing an order of the trial judge which denies a motion for new trial where the motion is addressed essentially to the evidentiary basis for a jury verdict. This is merely a recognition that the trial judge is in an eminently better position than an appellate court to pass on such matters. See Wolkowsky v. Goodkind, 1943, 153 Fla. 267, 14 So.2d 398. Where as here, the evidence and inferences therefrom were conflicting on material issues, the jury verdict was not shown to have been the result of improper influence, and there appears to be a reasonable basis in the evidence to support the verdict, there is no reason for an appellate court to reverse a trial judge's denial of such a motion. See Clark v. Ocala Gas Company, Fla.App. 1960, 123 So.2d 391, 392. For the foregoing reasons we hold that Point I is without merit.
The plaintiff's second point on appeal is that the trial judge erred in refusing to give the plaintiff's requested instruction number 6. This instruction in substance states that the City had the duty of giving its officers proper instructions in the use of mace. In our opinion this point does not demonstrate error. The substance of the requested instruction was covered by Standard Jury Instruction 4.1 defining negligence. Under this general instruction given by the trial judge, the plaintiff could have argued to the jury that the City was negligent in failing to give proper instructions to Briscoe with respect to the use of mace.
Under plaintiff's third point the contention is made that the trial court should have given the plaintiff's requested instruction reading as follows:
"Even a person under arrest has certain liberties that cannot be taken from him, including the liberty to be free from unlawful attacks on his physical being. It has always been the policy of the law to protect the physical integrity of every person from unauthorized violation or interference. So this plaintiff, while under arrest, had the right under both the Florida Constitution and the Federal Constitution not to be deprived of this remaining liberty without due process of law.
"Due process of law means, among other things, that no one can be punished until he has been convicted and sentenced by a court with authority to act in his case. In other words, a police officer does not have the authority to punish a person in the process of arresting him for commission of a crime, even if he observed the person committing the crime. Punishment can only be lawful if it is based on the sentence of a court following a judgment of guilty."
We are unable to see how this instruction relates to the issues in the case. In our opinion it would merely have obfuscated the issues.
*904 Under his Point 4 the plaintiff contends that the trial court erred in failing to give a requested instruction which reads as follows:
"When a citizen is being arrested on the ground that he has committed only a minor offense or a misdemeanor and the citizen is merely moving away from or not cooperating with the officer and is not attempting to inflict bodily harm upon the officer, the officer is not priviledged to use such force or methods to effect the arrest as may produce serious bodily harm to the citizen, since the law considers it better to allow a petty offender to escape altogether than to do him great bodily harm."
In our opinion this instruction was properly refused because it does not appear to be in accordance with Florida law. The standard of care the law imposes on municipal officers in effecting an arrest has been discussed in numerous opinions. In City of Miami v. Albro, Fla.App. 1960, 120 So.2d 23, the Court held that a police officer may use such force as reasonably appears necessary under all circumstances to effect a lawful arrest. The court stated that if an officer uses more force than he is privileged to use he is liable only for the excess. See also City of Miami v. Simpson, Fla. 1965, 172 So.2d 435 and City of Ft. Pierce v. Cooper, Fla.App. 1966, 190 So.2d 12.
In Hutchinson v. Lott, Fla.App. 1959, 110 So.2d 442, cited by the plaintiff in support of the proposed instruction, the opinion indicated that the defendant fired a shot at plaintiff's outboard motor in an effort to stop the plaintiff's boat and to arrest the plaintiff for a misdemeanor. The court held that the evidence was insufficient to sustain a cause of action for assault and battery. The principle announced in the decision was that the measure of force which a police officer may use in effecting an arrest is that which an ordinary and prudent person would have used in the same circumstances. The court did say that an officer in attempting to effect an arrest for a misdemeanor is not justified in shooting or killing the misdemeanant unless such is necessary in self-defense. Obviously, this dictum is not pertinent to the facts of our case. The plaintiff also cites State v. Dunning, 1919, 177 N.C. 559, 98 S.E. 530. There it was held on evidence showing that the defendant police officer shot a person to arrest him, that it was error to direct a verdict against the police officer where it appeared from the record that such force was necessary in view of violence threatened by the person sought to be arrested. Reference was made in the opinion to the principle that a police officer cannot kill or shed blood to effect the arrest of a fleeing misdemeanant, but again this proposition clearly does not apply to the facts of our case.
We conclude that there was no error in refusing to give the requested instruction  particularly in view of the fact that a full and complete instruction was given with respect to the duty of a police officer in effecting arrest and the limit on his right to use force.
Under his fifth point the plaintiff contends that the trial judge erred in not granting a new trial on the ground of newly discovered evidence. The plaintiff's motion for new trial was filed on 30 January 1970. Thereafter, on 24 February 1970 the plaintiff filed what he entitled "Amendment To Motion For a New Trial". The amendment alleged that the plaintiff's attorney had a conversation subsequent to the trial with the sheriff of Seminole County and was furnished by the sheriff with a booklet giving instructions on the use of mace. The booklet stated that mace is irritating to eyes and that the antidote is to flush the contaminated areas with cold water and baking soda. It does not say how soon this should be done.
In Springer v. Morris, Fla. 1954, 74 So.2d 781, the Supreme Court indicated that application for new trial should be granted on the ground of newly discovered evidence *905 only where the evidence is such as ought to produce a different result and is not merely cumulative. Assuming that the booklet had been introduced in evidence, it is rather difficult for us to say at this juncture that it would likely have produced a different result. Recall the testimony of Officer Joel who admitted that he knew at the time Mr. Jennings was arrested that proper treatment was to wash the eyes out as soon as possible. The jury knew that the City's agents were aware that this was a treatment that should have been administered to the eyes and still chose to find that the City was not guilty of negligence in failing to warn the plaintiff of this treatment. We conclude that the "newly discovered evidence" did not require the granting of a new trial.
For the foregoing reasons the judgment is affirmed.
Affirmed.
REED, C.J., and OWEN, J., concur.
WALDEN, J., dissents, with opinion.
WALDEN, Judge (dissenting):[1]
Police brutality is the issue. Current events being what they are, this phrase engenders heat one way and the other which tends to obstruct objectivity. Undoubtedly this emotion or some other improper influence crept into the jury room as the verdict rendered in favor of the defendants was in nowise connected or responsive to the manifest weight of the evidence or law of this case. Shocking this writer's judicial conscience as it does, I conceive it to be this appellate court's obligation to void the verdict and resulting judgment and to remand for a new trial before a new jury.
It was never intended that the popular slogan on the bumper sticker, "support your local police," should be taken literally in every instance regardless of circumstances. Even the most rigid thinkers and police sympathizers recognize its limitations. Law enforcers may occasionally prove unworthy and violate the very laws in their charge. Courts of law and reasoning friends of society know that in such case it is particularly a duty, for the benefit of all and the ultimate good image and performance of law enforcement bodies, to dispassionately expose and punish the miscreant and others legally responsible for his misdeeds. Here the penalties are civil, based on tort theories. Their imposition will tend to correct the intolerable misbehavior reflected in this appeal, both now and for the future, and will also properly provide recompense for the victim.
Viewing this from the correct side of the appellate proposition we will chronicle the events low key as they appear from the uncontradicted testimony and from a resolution of the highly disputed evidence in favor of defendants.
To set the main participants, plaintiff is Clark Jennings, a 68 year old attorney, 44 year resident of Orange County, Phi Beta Kappa, former municipal court judge and former president of the Orange County Bar Association. He drove a vehicle with Orange County license plates and produced his driver's license thereby giving access to the information contained thereon. It was known that he was a lawyer, an Orange County resident and that his law office was adjacent to the scene of the encounter. (This description is supplied, not to suggest that plaintiff was a privileged citizen entitled to special treatment, but to show the circumstances of his appearance *906 and background as known to the police in order that the reasonableness of their conduct can be assayed and to show that the police officer had no ground or basis to believe that plaintiff was a threat or dangerous to the police or that he was a transient or a bum who was ignorant and who would flee the jurisdiction and fail to answer or honor a minor traffic citation. In other words, the officer had every reason to believe and no reason to disbelieve that plaintiff was a responsible person who would be absolutely accountable for a traffic ticket and the process of the municipal court.)
Defendant, William Briscoe, was a police officer in the defendant City of Winter Park. He was uniformed and armed. He was 27 years of age, 5'10" in height, and weighed 250 pounds. There were at least three prior instances where he used excessive and unwarranted force and violence upon members of the public as he ostensibly performed his police duties.
The prime confrontation occurred outside plaintiff's office just before 5:00 P.M. on April 3, 1968, in Winter Park, Florida. Briscoe, according to his account, observed plaintiff cut a corner too sharply as plaintiff parked his car preparatory to entering his office. Briscoe approached plaintiff for the sole purpose of administering a warning for this minor violation. Plaintiff declined to listen to a traffic lecture and so Briscoe, with plaintiff's driver's license, wrote out a traffic ticket, as he was, of course, authorized to do on account of the alleged improper turn. While plaintiff accepted the ticket and said he would honor it, he refused to sign it as demanded by Briscoe. Things having reached an impasse, the plaintiff started to leave for his office; whereupon, according to Briscoe's version,
"A. I told him that he would have to come along, and he said the only place he was going was upstairs to his office building.
"He then turned and started to walk across the street.
"I felt that instead of trying to force the man into the car and create a scene that I would do the best I knew how and I extracted my mace and maced Mr. Jennings in the face. (Italics supplied.)
"Q. All right. Now, when you maced Mr. Jennings approximately how far would you say you were from Mr. Jennings?
"A. I was standing approximately three feet from Mr. Jennings.
"Q. I see. Now, at the time you squirted the mace at him, sir, was he facing you or what was the position of his face?
"A. He was facing me at the time, yes.
* * * * * *
"Q. And how long would you say the period of squirting was?
"A. Three second burst.
"Q. Now, after squirting Mr. Jennings with the mace what happened?
"A. He became temporarily immobilized from the affects of the mace and I just merely took him by the arm and guided him to the rear of the patrol car and asked him if he wouldn't please get in which he did."
Suffice it to say that plaintiff's version of the encounter is at gross variance and reflects a brutal and overbearing course of unprovoked conduct on the part of Briscoe. Also, I shall not undertake to recount the trip to the police station where plaintiff was mugged, fingerprinted and kept for one and one-half hours without relief for his eyes, and the abusive conduct of Officer Joel.
What shines forth without contradiction is that a private citizen whose only transgression of a city ordinance consisted of a *907 traffic violation of such insignificant character that it only merited a warning was maced in the eyes without legal justification or provocation and transported to jail where he was mugged, booked and held for one and one-half hours without treatment. The encounter escalated step by step from a most trivial observation (of the improper turn), which probably could just as well have been overlooked as a matter of police discretion. It ended with plaintiff's being shot in the eyes with mace and chemically and painfully immobilized to the same degree as if he had been a dangerous desperado, Number 1 on the Wanted List. Using Briscoe's rationale whereby he maced plaintiff rather than "create a scene", it might be speculated that plaintiff was fortunate that Briscoe was armed with mace, as otherwise he might have conceived it to be his duty to shoot plaintiff with his revolver. Combing through the steps, it may be said that Briscoe, while evidencing questionable police judgment as he progressed, had the right to stop plaintiff  to warn him  to give him a ticket  and to arrest him. The point of the tort though, is that Briscoe under the circumstances used excessive, unreasoning and unnecessary force in making the arrest. There is an absolute lack of showing that Briscoe could not take plaintiff into custody in the usual and ordinary way, even though such methods might "create a scene."
The measure of necessary force is generally considered to be that which an ordinary prudent and intelligent person, with the knowledge and in the situation of the arresting officer, would have deemed necessary under the circumstances. However, an arresting officer may use no more force than is reasonably necessary for the purpose of making the arrest and protecting himself from injury. 3 Fla.Jur., Arrest, § 38.
"* * * The limit of the force to be used by the police is set at the exercise of such force as reasonably appears necessary to carry out the duties imposed upon the officers by the public. See Dixon v. State, 101 Fla. 840, 132 So. 684, 688; Hutchinson v. Lott, Fla.App. 1959, 110 So.2d 442, 444. See also Restatement, Torts, § 132; Prosser, Torts, 111 (2nd ed. 1955). Whether the force used is reasonable is a question of fact to be determined in light of the circumstances of each particular case. In any case the officer can never use more force than reasonably appears to be necessary, or subject the person arrested to unnecessary risk of harm. If the officer exceeds the amount of force he is privileged to use under the circumstances, he is liable for only so much of the force as is excessive." City of Miami v. Albro, Fla.App. 1960, 120 So.2d 23, at page 26.
This language is adopted with approval in City of Fort Pierce v. Cooper, Fla.App. 1966, 190 So.2d 12.
Where a jury departs from its function and fails to harmonize its verdict with the manifest weight of the evidence, an appellate court in such unusual case must exercise its power to grant the litigants a new trial.
I dissent and say that I would reverse and remand for a new trial.
NOTES
[1] An explanation is required. This dissent nowhere mentions or responds to the majority opinion. This circumstance is occasioned by the fact that the majority in the first instance filed their decision as a naked affirmance without opinion. Thus, this dissent was necessarily addressed to that decision. Upon filing the instant dissent, though, the majority withdrew their initial decision to merely affirm and substituted the majority opinion herein reflected. As a matter of sequence, then, the majority opinion follows and responds to the dissent. For a like awkwardness involving this same panel, see Gasparro v. Horner, Fla.App. 1971, 245 So.2d 901.