WHITE, Judge.
James A. Boyd was tried for first degree murder of Francis J. Veard, Sr. and was found and adjudged guilty of second degree murder.
The defendant asserts in substance as grounds for reversal (1) the introduction of testimony concerning oral admissions against interest which “alleged oral * * * admission was immediately repudiated by the defendant”; (2) the refusal of the trial court to declare a mistrial after an officer testified that the defendant’s arrest and initial detention in Kentucky had been for “kidnapping”; and similarly the trial court’s refusal to strike from defendant’s subsequent signed statement that portion thereof referring to “kidnapping” of the driver of the automobile in which the defendant fled after the alleged murder; (3) the exclusion of proffered testimony to show that the deceased actually had carried on an illicit relationship with the defendant’s wife; and, (4) refusal of the trial court to grant a mistrial grounded on a statement of the State’s closing argument, viz. “So what are the jury going to believe, what he said yesterday or what he told the officers all along? There is no evidence in here to show improper conduct. * * * ”
The grievances of the defendant, if not entirely without substance in themselves, are of negligible import when viewed in the scope of the evidence as a whole. As we read the record, it competently discloses the following salient facts. Upon the defendant’s return from a sojourn in South America he received information which gave him reason to believe that his wife had been associating intimately with another man during his absence. He persuaded one Parvin Sutton to point out the house where the defendant’s wife reportedly visited during his absence. Upon ascertaining that this was the residence of Francis J. Veard, the defendant went to his own residence, obtained two .45 caliber automatic pistols and a German Luger, loaded the weapons, returned by automobile to the residence of Francis J. Veard, called Veard to the porch, engaged him in brief conversation and shot him several times thereby effecting his death. The defendant fled from Florida in an automobile owned and driven by one Donald Looney and was arrested in Kentucky where he made oral statements identifying himself as the one who had shot Francis J. Veard. He waived extradition and thereafter made and signed a statement in Florida to the effect that he shot the deceased substantially in the manner described.
The defendant contended that he did not intend to shoot or kill Francis J. Veard when he armed himself and drove to the Veard residence. He testified that during his conversation there with Veard the latter made inflammatory statements which confirmed the defendant’s suspicion and apparently incited him to shoot. In this connection it is notable that the finding of second degree murder negated the premeditation which would have been implicit in a verdict finding the defendant guilty of first degree murder. The defendant nevertheless urges that, absent the trial court’s rulings complained of, the verdict might have been even more favorable. This argument is premised on commission of harmful error which, as previously indicated, the record fails to disclose.
We comment first on the testimony concerning oral admissions against interest following the defendant’s arrest in Kentucky. Contending that the alleged statement was in response to an accusation and that his immediate denial thereof negated such statement and rendered evidence thereof inadmissible, the defendant cites among others the case of Douglas v. State, Fla.1956, 89 So.2d 659. In that case the Supreme Court of Florida noted the rule that silence following an accusation tends to show guilt, but the court went on to hold that the rule was inapplicable where an accusation is directed to the defendant and is immediately denied by him. The Douglas case is not in point where, as here, *273 the situation is not one of silence following an accusation but involves a voluntary self-incriminating statement as heard and attested by an agent of the FBI. Moreover, on the premise that the question of repudiation vel non of the alleged oral admission was an issuable matter, there was also before the jury the defendant’s subsequent signed statement of admission against interest, and it was within the province of the jury to find that the defendant did not “immediately repudiate” his first statement orally made to the FBI agent. We conclude that there was no prejudicial error in the reception in evidence of the agent’s testimony, so the defendant’s position on this point is held to be without merit.
The defendant next protests the inclusion in evidence of reference to his arrest in Kentucky for “kidnapping” whereas he was tried for murder. The record indicates that the State injected the information with reference to the defendant’s arrest on the basis of a kidnapping report. The court studiously instructed the jury to ignore any reference to kidnapping. Even so, evidence of flight being evidence tending to show guilt, we do not say that it would have been error in the circumstances of this case to include evidence of the manner of defendant’s flight, even though it may have comprehended the commandeering of an automobile and its owner. In any event, the court having instructed the jury to disregard any statement with reference to kidnapping, the jury was not in the position of considering inadmissible evidence of an unrelated crime proscribed by the rule in San Fratello v. State, Fla.App.1963, 154 So.2d 327. Cf. Hooper v. State, Fla.App. 1959, 115 So.2d 769. In the instant case the defendant himself in his signed statement, which was presented to the jury in toto, stated that after the shooting he at once proceeded to a drive-in where, at gun point, he succeeded in having one Donald Looney drive him away in Looney’s autmobile. In this context we think the reception in evidence of a testimonial reference to “kidnapping” in connection with the defendant’s arrest would not constitute reversible error.[1]
We come next to the exclusion of the testimony of several witnesses proffered for the purpose of showing that the deceased in fact carried on an adulterous relationship with defendant’s wife. The issue before the jury on this phase of the case was not whether the defendant’s wife actually committed adultery but whether or not the defendant was so activated by sudden heat of passion at the time of the shooting as to reduce the killing to a degree of homicide less than first or second degree murder. The proposed testimony of Carol Shivers illustrates the general type of testimony proffered. She would have testified that the defendant’s wife had been planning to get a divorce. However, even this relatively mild information was not communicated by the witness to the defendant. Certain testimony proffered,, but rejected, concerned hearsay rumors, that had not been communicated to the defendant prior to the homicide, while still other proposed testimony sought to impugn the character of the defendant’s wife but did not go to the question of whether or not the defendant acted in sudden heat of passion, and it did not contain anything which would mitigate the degree of homicide. All of this proffered testimony was beside the point and was properly excluded.
 On the last point presented the defendant lias failed to furnish a sufficient record of the State’s argument to the jury to enable us to determine whether or not the argument was unduly prejudicial. The State contends that the argument in question was intended to counter arguments of the defense which, incidentally, the record also fails to contain. Inasmuch as the defendant had the burden of furnishing a sufficient record for adequate review of the question, we cannot disturb the trial court’s *274 ruling denying defendant’s motion for a mistrial on the ground of improper argument.
Affirmed.
KANNER, J. (Ret.), and PATTI-SHALL, W. A., Associate Judge, concur.

. See Fla.Stat. § 54.23 and § 924.33, F.S.A. (harmless error statutes).