218 So.2d 535 (1969)
Hiram Cazes PARNELL, Appellant,
v.
The STATE of Florida, Appellee.
No. 68-499.
District Court of Appeal of Florida. Third District.
February 4, 1969.
Rehearing Denied February 25, 1969.
*537 Richard Barest, Miami, Joe N. Unger, Miami Beach, for appellant.
Earl Faircloth, Atty. Gen., and Harold Mendelow, Asst. Atty. Gen., for appellee.
Before CHARLES CARROLL, C.J., and PEARSON and BARKDULL, JJ.
BARKDULL, Judge.
Appellant, defendant in the trial court, seeks review of his conviction and sentence to five years in the State penitentiary, following a jury verdict finding him guilty of unlawfully buying, receiving, or aiding in the concealment of stolen property.
From the record on appeal it appears that on January 6, 1966, a Detective Sergeant Robert Rein of the Dade County Public Safety Department, posed as a fence and met with the defendant, who attempted to sell a fur coat to said detective. Although it was intended that the defendant be arrested at this time he was not, due to a cross-up of signals. Thereafter, Detective Rein ran a computer check on stolen fur coats and determined the coat in the defendant's possession was stolen from the residence of one Meek on November 27, 1965. Following a prearranged plan, Rein met with the defendant again on January 17, 1966 and went with him into a motel room, which had been wired for recording. While there, Rein questioned the defendant about the fur coat and any other crimes he might have committed. This conversation was recorded. During the course of the conversation, it was learned that the Defendant had certain credit cards in his possession, allegedly stolen the night before from the residence of a Mr. and Mrs. Garwood. On a prearranged signal, police officers entered the room, seized the credit cards, and arrested the defendant. At no time prior to this actual arrest was an arrest warrant or search warrant issued, nor was the defendant informed of his constitutional rights. At the subsequent jury trial of the cause, extensive testimony *538 was admitted as to the stolen credit cards and the recording of the aforementioned confession was admitted and played to the jury, both over the defendant's objection. Defendant was found guilty of violation of § 811.16, Fla. Stat., F.S.A.
The appellant has preserved the following points for review, wherein he contends the trial court erred: (1) In permitting introduction into evidence the alleged theft of the credit cards, committed subsequent to the crime for which the appellant was being tried, when such evidence far transcended the permissible bounds of relevancy to the charge being tried and became the feature of rather than an incident of the trial. (2) Failing to direct a verdict for him, when the proof submitted failed to establish his guilt beyond and to the exclusion of a reasonable doubt. (3) Denying his motion to suppress the evidence seized from his person and the taped evidence, when the evidence secured resulted from a prearranged illegal interrogation conducted in violation of his constitutional rights, and an illegal search and seizure. (4) Admitting portions of the tape recording into evidence, when said recording was made in violation of his constitutional rights and the relevancy of which did not outweigh the highly prejudicial nature of its contents and manner of presentation, for which a proper predicate had not been laid.
As to point one, it is well settled in Florida that evidence of collateral crimes, which tends to show guilty knowledge or intent to commit the crime in question, is admissible. See: Suarez v. State, 95 Fla. 42, 115 So. 519, wherein the following is found:
* * * * * *
"* * * where the nature of the crime is such that guilty knowledge must be proved, evidence is admissible to prove that at another time and place, not too remote, the accused committed or attempted to commit a crime similar to that charged. In other words, where guilt cannot be predicated upon the mere commission of an act, guilty knowledge may be proved by evidence of complicity in similar offenses; * * *".
* * * * * *
See also: Andrews v. State, Fla.App. 1963, 172 So.2d 505; Williams v. State, Fla. 1962, 110 So.2d 654. In order for the evidence of collateral crimes to be admissible, however, there must be clear and convincing proof of a connection between the defendant and the collateral occurrences. State v. Norris, Fla. 1964, 168 So.2d 541. Further, the collateral crime must be related to the crime involved at trial. Hawkins v. State, Fla. 1968, 206 So.2d 5; Williams v. State, Fla. 1960, 117 So.2d 473. The defendant was charged with buying, receiving, and aiding in the concealment of a fur coat, well knowing that the coat was stolen. At the time of his arrest for the above charge, the defendant was also in possession of certain credit cards belonging to a Mrs. Garwood.
The ultimate question is whether the evidence, showing that the defendant was in possession of stolen credit cards at the time of his arrest, was a feature of instead of incident to the charge being tried. It does not appear from the record herein that the Garwood credit cards were the central theme of the case. The trial judge exercised every precaution to render said evidence incidental to the main theme, to wit: the Meek fur coat; even though the prosecution made every attempt to stress the effect of said credit cards. The most damaging comments on said cards was made by the prosecution in closing argument. However, as these comments were not prejudicial per se and as the closing argument of the defense was not reported, it is impossible to determine whether or not the prosecution's comments were rebuttal to the defense's argument. Simms v. State, Fla. 1953, 64 So.2d 561; Boyd v. State, Fla. App. 1964, 162 So.2d 271; 2 Fla.Jur., Appeals, § 207; Compare Florida East Coast Railway Company v. Morgan, Fla.App. 1968, 213 So.2d 632. The factors to be considered *539 in this type of evidence have been set forth in Norris v. State, Fla.App. 1963, 158 So.2d 803, as follows:
* * * * * *
"`* * * the strength of the independent evidence, the specific weakness which the similar fact evidence is admitted to remedy, the strength of the similar fact evidence itself. * * *'"
* * * * * *
The Florida Supreme Court considered this in Hawkins v. State, supra, wherein it considered Williams v. State, supra, and held, in affirming a conviction:
* * * * * *
"* * * and we hold, as the trial judge did, that the evidence was admissible and no error was committed in its admission. It is clear that here the evidence of the other crimes committed in the same general area, all within a space of eight days, were relevant to material facts and issues here; that is, the pattern, motive and intent of appellant in accosting filling station attendants, planning to rob each of them, and killing them with a shotgun blast in the neck or lower face. See Mackiewicz v. State, Fla., 114 So.2d 684."
* * * * * *
In the case at bar, the weakness in the State's case was the element of guilty knowledge that the fur coat was in fact stolen. The evidence that the defendant possessed obviously stolen credit cards and attempted to sell them to a police officer, posing as a "fence", at the same time he was attempting to sell a fur coat clearly was directed to establishing guilty knowledge. The collateral crime was so closely connected to the main crime in time, place, and circumstance that the rule of relevancy clearly applies to the instant case.
As to point two, the sufficiency of the evidence, the information in the instant cause alleged that the fur coat in question was the property of Rosa M. Meek. Mrs. Meek testified that her fur coat was missing from her home after a burglary on November 27, 1965. The fur coat was described as a Brazilian otter with a white mink collar. At trial, Mrs. Meek positively and unequivocally testified that the fur coat was the same coat that was stolen from her. In an attempt to impeach Mrs. Meek's identification of the fur coat as her property, the defendant established that Mrs. Meek could not find certain water spots that stained the inside of the coat some eight years prior. Further, there was some conflict as to the color of the mink collar. However, it was clearly established that the coat in question and Mrs. Meek's coat were identical as to the fur, Brazilian otter and mink, and the label, "Fredrica".
In a prosecution for buying, receiving, and aiding in the concealment of stolen property, ownership of the property as alleged must be proven. Ketelsen v. State, Fla.App. 1968, 211 So.2d 853. Ownership is a question of fact to be decided by a jury. Once the jury resolves this question against the defendant by a verdict of guilty, it is the duty of an appellate court to review the record for the purpose of determining whether it contains sufficient competent evidence which, if believed, would support the verdict.
A review of the record reveals sufficient competent evidence to establish the element of ownership. Any conflicts that arose with regard to the spots on the fur coat and the color of the mink collar were decided in favor of the State. Thus, where every element of the crime is present in the record, this court should not interfere with the conclusions of the trier of fact. Lee v. State, Fla.App. 1963, 153 So.2d 351; Eizenman v. State, Fla.App. 1961, 132 So.2d 763. See: Lockett v. State, Fla.App. 1966, 188 So.2d 12.
Under point three, the defendant makes the constitutional attack on his conviction, basically upon the following grounds: (1) *540 The delayed arrest violated his Fifth Amendment rights, since he made incriminating statements while deprived of his freedom. (2) He was denied his Sixth Amendment right to counsel. (3) The recording of his conversation with an undercover police agent, without prior judicial permission, violated his rights under the Fourth Amendment.
The defendant was at no time under any police compulsion or coercion to make any statements whatsoever. The conversation held with Detective Rein in the motel was voluntary. The defendant was not "taken" to the room; he went willingly and by his own design. A similar situation was present in Hoffa v. United States, 385 U.S. 293, 87 S.Ct. 408, 17 L.Ed.2d 374. In the cited case, a union official working as an undercover agent for the Federal Government was present when certain incriminating admissions were secured. The court held:
* * * * * *
"The petitioner argues that his right under the Fifth Amendment not to be `compelled in any criminal case to be a witness against himself' was violated by the admission of Partin's testimony. The claim is without merit.
"There have been sharply differing views within the Court as to the ultimate reach of the Fifth Amendment right against compulsory self-incrimination. Some of those differences were aired last Term in Miranda v. [State of] Arizona, 384 U.S. 436, 499, 504, 526, 86 S.Ct. 1602, 1640, 1643, 1654, 16 L.Ed.2d 694 [737, 740, 753, 10 A.L.R.3d 974]. But since at least as long ago as 1807, when Chief Justice Marshall first gave attention to the matter in the trial of Aaron Burr, all have agreed that a necessary element of compulsory self-incrimination is some kind of compulsion. Thus, in the Miranda case, dealing with the Fifth Amendment's impact upon police interrogation of persons in custody, the Court predicated its decision upon the conclusion `that without proper safeguards the process of in-custody interrogation of persons suspected or accused of crime contains inherently compelling pressures which work to undermine the individual's will to resist and to compel him to speak where he would not otherwise do so freely. * * *' 384 U.S. at 467, 86 S.Ct. at 1624, 16 L.Ed.2d 694 [at 719].
"In the present case no claim has been or could be made that the petitioner's incriminating statements were the product of any sort of coercion, legal or factual. The petitioner's conversations with Partin and in Partin's presence were wholly voluntary. For that reason, if for no other, it is clear that no right protected by the Fifth Amendment privilege against complusory self-incrimination was violated in this case."
* * * * * *
Thus, it is clear the Miranda warnings were not applicable in the instant case. The defendant was not deprived of any constitutional rights by not being arrested prior to the meeting of January 17, 1966. In Hoffa v. United States, supra, the supreme court held:
* * * * * *
"* * * There is no constitutional right to be arrested. The police are not required to guess at their peril the precise moment at which they have probable cause to arrest a suspect, risking a violation of the Fourth Amendment if they act too soon, and a violation of the Sixth Amendment if they wait too long. Law enforcement officers are under no constitutional duty to call a halt to a criminal investigation the moment they have the minimum evidence to establish probable cause, a quantum of evidence which may fall far short of the amount necessary to support a criminal conviction."
* * * * * *
Detective Rein had probable cause for the defendant's arrest; he did not have the *541 "quantum" of evidence necessary for a conviction. He could not prove that the defendant knew the fur coat was stolen. Furthermore, the defendant told Detective Rein that "he was bringing something else besides the fur coat and I hadn't seen what else he had".
The contention that defendant's Fourth Amendment rights have been violated is without merit. Detective Rein's testimony with regard to the conversations he had with the defendant are admissible. Hoffa v. United States, supra; Lewis v. United States, 385 U.S. 206, 87 S.Ct. 424, 17 L.Ed.2d 312. In Florida, where the conversation has been recorded and the recording made with the consent of one of the parties to the conversation, even though the consenting party is an undercover police officer, such conversation is admissible. Koran v. State, Fla.App. 1968, 213 So.2d 735. This is particularly true when the recording is used to corroborate the testimony of a consenting party to the recording. Koran v. State, supra; Hajdu v. State, Fla.App. 1966, 189 So.2d 230; Lopez v. United States, 373 U.S. 427, 83 S.Ct. 1381, 10 L.Ed.2d 462, 463.
Our attention has been called to the recent case of Dancy v. United States, 5th Cir.1968, 390 F.2d 370, wherein the defendant was convicted of narcotic violations. On appeal, he contended that the trial court committed reversible error when it allowed a government agent to testify about a conversation between the defendant and a third person. The agent overheard the conversation through an electronic device. The Fifth Circuit affirmed, and the following is found in the opinion:
* * * * * *
"* * * And it remains the law that testimony regarding the content of conversations between informers and suspects overheard by government agents by the use of electronic devices under circumstances such as those in this case are admissible into evidence. See Osborn v. United States, 1966, 385 U.S. 323, 87 S.Ct. 429, 17 L.Ed.2d 394; Lopez v. United States, 1963, 373 U.S. 427, 83 S.Ct. 1381, 10 L.Ed.2d 462; On Lee v. United States, 1952, 343 U.S. 747, 72 S.Ct. 967, 96 L.Ed. 1270; Long v. United States, 5 Cir., 1967, 387 F.2d 377 [Nov. 10, 1967]; Beatty v. United States, 5 Cir., 377 F.2d 181, rev'd. on other grounds, 1967, 389 U.S. 45, 88 S.Ct. 234, 19 L.Ed.2d 48; Hurst v. United States, 5 Cir., 1967, 370 F.2d 161.
"These cases are undisturbed by the Supreme Court's very recent decision in Katz v. United States, 1967, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576, where the Court held it to be an unreasonable search and seizure for federal agents by means of an external (non-wiretapping) electronic device to listen to and record the defendant's end of telephone conversations made from a public booth. Indeed, the Court specifically expressed continued approval of the principle that `what a person knowingly exposes to the public, even in his own home or office, is not a subject of Fourth Amendment protection. See Lewis v. United States, 385 U.S. 206, 210, 87 S.Ct. 424, 427, 17 L.Ed.2d 312.' Katz v. United States, supra, 389 U.S. at 351, 88 S.Ct. at 511, 19 L.Ed.2d at 582. * * *"
* * * * * *
Point four, relating to the introduction of tape recordings, fails to indicate any error on the part of the trial judge. His ruling is in accord with this court's opinion in Gomien v. State, Fla.App. 1965, 172 So.2d 511, wherein it was concluded that in order for a tape recording to be admissible the State must show to the trial court's satisfaction that (1) the recording device was operating properly, (2) that it was operated in a proper manner, (3) the recording was accurate, and (4) the voices of the persons speaking were identified.
The proper predicate for the admission of the tape recording is apparent from the record. The communications technician testified as to how and where he placed the microphone and tape recorder. *542 He tested the equipment and he testified that it tested out properly. He operated the equipment and personally listened during the entire time it was used to record the defendant's conversation with Detective Rein. He placed his mark on the tape. No objection was made to his qualifications to set up and operate the recording equipment. He and Detective Rein identified the voices on the tape as being those of the defendant and Detective Rein. Furthermore, Rein was able to identify the conversation. It should be noted that no objection was made to the accuracy of the recording. The only objection was to its irrelevancy and immateriality. Prior to the playing of the tape recording before the jury, the trial court previewed the recorded conversation from a transcript and deleted portions it considered immaterial, irrelevant, and prejudicial. Gomien v. State, supra; Wright v. State, 38 Ala.App. 64, 79 So.2d 66.
The defendant asserts that the tape is inadmissible because the State failed to prove that the recording was in proper custody pending trial. It is submitted that this issue goes to whether or not the tape has been tampered with. The trial court had the transcript of the instant recording from a prior trial. It was compared with the instant recording for accuracy. Under the circumstances, it is clear that the recording was not tampered with and was an accurate reproduction of the conversation in question. Furthermore, the communications officer testified that the recording had been in his continuous possession since he removed it from the motel. No refutation of this statement was made in either direct or cross-examination. Deeb v. State, 131 Fla. 362, 179 So. 894. There was no evidence of tampering. Watson v. State, Fla. 1966, 190 So.2d 161.
Therefore, for the reasons above stated, we find no error in the verdict, adjudication, and sentence here under review and affirm.
Affirmed.