438 So.2d 358 (1983)
Buddy Earl JUSTUS, Appellant,
v.
STATE of Florida, Appellee.
No. 58912.
Supreme Court of Florida.
September 1, 1983.
Rehearing Denied October 26, 1983.
*361 Jerry Hill, Public Defender, and David A. Davis, Asst. Public Defender, Tenth Judicial Circuit, Bartow, and Albert Rosebury Mander, III, Dade City, for appellant.
Jim Smith, Atty. Gen., and Michael A. Palecki, Asst. Atty. Gen., Tampa, for appellee.
BOYD, Justice.
This cause is before the Court on appeal from a circuit court judgment adjudicating appellant guilty of first-degree murder, robbery, kidnapping, and sexual battery, and sentencing him to death. We have jurisdiction of the appeal. Art. V, § 3(b)(1), Fla. Const.
On October 6, 1978, Stephanie Michelle Hawkins, a wholesale distributor of sunglasses marketed by Visual Scene, Inc., called on one of her customers at a drug store in a Tampa-area shopping center. While she was in her van in the parking lot, appellant approached, took over control of the van at gunpoint, and abducted Ms. Hawkins using her automobile. Dale Goins, appellant's companion and co-defendant, followed them driving appellant's car. They drove out into the country and went down a dirt road in Pasco County. There, the jury could have concluded from the evidence, appellant raped Ms. Hawkins and Goins stole sunglasses from her van and put them in appellant's car. Then appellant shot the victim twice in the head, killing her.
On the following day, appellant and Goins went to Gwinnette County, Georgia, where they abducted another woman from a shopping center parking lot. They took her to a secluded, outlying area where Goins committed sexual battery upon her after which appellant shot and killed her. They left appellant's car at the scene and departed in the woman's gold Dodge van, after removing the license tags from appellant's car.
After the Gwinnette County police discovered the crime scene, they were able to determine from the vehicle identification number that the car abandoned there was registered in New York in appellant's name. They learned that he was free on bond on a pending robbery charge. They also obtained appellant's birthdate, height, weight, and the number on the tags removed from appellant's car. At trial, witnesses who had seen appellant and Goins in Pasco County identified by photograph the abandoned car as the car the two men were using in Pasco County. When discovered in Georgia, appellant's car contained hundreds of Visual Scene sunglasses.
On October 10, 1978, the Gwinnette County, Georgia, law enforcement authorities obtained a warrant for appellant's arrest from a local magistrate. They published a nationwide look-out bulletin through the National Crime Information Center teletype. The teletype bulletin included appellant's license tag number and a description of the Georgia victim's gold Dodge van. The next day, the Georgia police learned from appellant's former wife that appellant might have gone to Grundy, Virginia, to visit his brothers and sisters. That evening, a Virginia state trooper, having been orally advised of appellant's possible whereabouts and the warrant for his arrest, went to the boarding school where appellant's siblings were staying. There he saw the gold Dodge van bearing appellant's license tag. The officer then located appellant and arrested him. A Gwinnette County, Georgia, detective then went to Grundy, Virginia, for the purpose of questioning appellant. After being advised of his fifth amendment rights, appellant confessed to the Georgia *362 and Florida murders. He also confessed to an earlier murder which had occurred in Virginia. After being convicted of murder in Virginia, appellant was brought back to Florida for trial on the charges in the instant case.
The Gwinnette County, Georgia, detective who interrogated appellant testified at the trial concerning appellant's pre-trial statement. According to appellant's statement, he picked up the victim in the parking lot of an Eckerd Drugs store in Tampa. He drove her van to a bank so the woman could cash a check and give appellant some money. The bank declined to cash her check, so they went to another Eckerd's where she obtained some cash. Then they went out into the country. Appellant said that he and the victim engaged in sexual relations with her consent. Then, however, she tried to reach for his gun, they struggled, and the gun discharged, wounding her in the head. Then he shot her again and he and Goins left the area.
Appellant's pre-trial statement was corroborated in certain particulars by the testimony of a bank clerk and an Eckerd Drugs employee who told of seeing the victim during the time period when appellant forced her to try to cash a check so he could rob her. There was also testimony that appellant's fingerprints were found on the door of the victim's van. The state also introduced evidence of appellant's confession to the Georgia murder.
Appellant argues that his confessions should have been excluded as the products of an illegal arrest. The trial court found that the affidavit submitted in support of the application for the arrest warrant issued in Georgia was insufficient and that the warrant itself was therefore invalid. The court also found, however, that there was probable cause for the arrest and that the arrest was legal without a valid warrant, and therefore held the confessions admissible. Appellant relies on the case of Whiteley v. Warden of Wyoming State Penitentiary, 401 U.S. 560, 91 S.Ct. 1031, 28 L.Ed.2d 306 (1971). There a sheriff obtained an arrest warrant based on an insufficient complaint. A bulletin was sent out and a police officer in another county made the arrest and conducted a search incident to the arrest. The search uncovered evidence which was used in convicting Whiteley. The Supreme Court ordered a new trial, holding that the products of the search were inadmissible since there was no probable cause to issue the warrant.
Whiteley is distinguishable from the present case. In Whiteley the Supreme Court noted that in addition to the fact that the warrant was not supported by probable cause, there was no probable cause to justify the arrest itself. In this case, however, the trial court found and the record shows that the law enforcement authorities involved in the investigation did in fact have sufficient information to give them probable cause to believe that appellant had committed felonies.
In the case of United States v. Watson, 423 U.S. 411, 96 S.Ct. 820, 46 L.Ed.2d 598 (1976), the Court held valid the warrantless arrest of a suspect in a public place, based upon probable cause to believe the suspect had committed a felony. The Court said that "there is nothing in the Court's prior cases indicating that under the Fourth Amendment a warrant is required to make a valid arrest for a felony. Indeed the relevant prior decisions are uniformly to the contrary." Id. at 416-17, 96 S.Ct. at 824. The Court later recognized the only exception to this general rule, holding a warrant necessary for entry into the arrestee's home for the purpose of making an arrest. Payton v. New York, 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980).
For example, in United States v. Rabinowitz, 339 U.S. 56, 70 S.Ct. 430, 94 L.Ed. 653 (1950), the defendant questioned the legality of his arrest on the ground of the insufficiency of the warrant to authorize the arrest. The Court held that the evidence obtained by search incident to the arrest was admissible since "[e]ven if the warrant of arrest were not sufficient to authorize the arrest for possession of the stamps, the arrest therefor was valid because the officers had probable cause to *363 believe that a felony was being committed in their very presence." Id. at 60, 70 S.Ct. at 432-433. In a later case the Court reversed a conviction because the arrest warrant was not supported by a sufficient finding of probable cause. The Court refused to consider the government's argument that the arrest was justified by probable cause without regard to the warrant because this argument was being presented for the first time on appeal. The Court added, "This is not to say, however, that in the event of a new trial the Government may not seek to justify petitioner's arrest without relying on the warrant." Giordenello v. United States, 357 U.S. 480, 488, 78 S.Ct. 1245, 1251, 2 L.Ed.2d 1503 (1958).
Similarly, in the present case, after finding the warrant itself invalid, the court was correct in looking at the factual basis supporting the officers' determination that they had probable cause for arrest. Appellant argues that the trial court should have held that the invalidity of the warrant was determinative of the legality of the arrest. He cites Orr v. State, 382 So.2d 860 (Fla. 1st DCA 1980), where the court applied the rule that a magistrate should only consider the supporting affidavit when issuing a warrant. In the present case, however, we are not concerned with the question of whether the warrant was valid  the trial court found that it was not  but with whether there was probable cause to make the arrest without a warrant. Since the validity of the warrant was thus irrelevant, there was no reason for the court to limit itself to the information in the supporting affidavit when deciding whether there was probable cause for the arrest.
There is an abundance of evidence to support the trial court's finding that there was probable cause to arrest appellant. The Gwinnette County, Georgia, police had been told that on the day of the Georgia murder two men were seen sitting in a car in the parking lot of a grocery store near the shopping center where the victim was abducted. The grocer became suspicious, wrote down the license plate number, and described the car to the police. The description fit that of the car later found at the scene where the victim's body was discovered. The police learned that the license number was issued in appellant's name. The vehicle identification number of the abandoned car (from which the plates had been removed) also revealed that the car was registered in appellant's name. When the Virginia state patrol officer, acting on further information as to appellant's possible location, went to the school in Grundy, Virginia, he found the victim's van bearing appellant's license tag parked outside the building in which he found appellant. The cumulative information constituted probable cause and went far beyond the showing initially provided to the Georgia magistrate in support of the arrest warrant. In deciding whether there was probable cause for the arrest, the trial court was authorized to consider all of the collective knowledge and information of all of the officers involved in the investigation. See, e.g., United States v. Agostino, 608 F.2d 1035 (5th Cir.1979); United States v. Rose, 541 F.2d 750 (8th Cir.1976), cert. denied, 430 U.S. 908, 97 S.Ct. 1178, 51 L.Ed.2d 584 (1977); State v. Thornton, 300 N.W.2d 94 (Iowa 1981).
The Gwinnette County, Georgia, police officers had information amounting to reasonable and probable cause to believe that appellant had committed kidnapping, robbery, and murder.
The usual rule is that a police officer may arrest without warrant one believed by the officer upon reasonable cause to have been guilty of a felony, and that he may only arrest without a warrant one guilty of a misdemeanor if committed in his presence. Kurtz v. Moffitt, 115 U.S. 487 [6 S.Ct. 148, 29 L.Ed. 458]; Elk v. United States, 177 U.S. 529 [20 S.Ct. 729, 44 L.Ed. 874].
... .
The reason for arrest for misdemeanors without warrant at common law was promptly to suppress breaches of the peace, 1 Stephen, History of Criminal Law, 193, while the reason for arrest without warrant on a reliable report of a felony was because the public safety and *364 the due apprehension of criminals charged with heinous offenses required that such arrests should be made at once without warrant. Rohan v. Sawin, 5 Cush. 281 [Mass. 1851].
Carroll v. United States, 267 U.S. 132, 156-57, 45 S.Ct. 280, 286, 69 L.Ed. 543 (1925). If it were to be authoritatively held that under the fourth amendment warrantless felony arrests based on probable cause must be further justified by the existence of exigent circumstances, see United States v. Watson, 423 U.S. at 433-35, 96 S.Ct. at 832-33 (Marshall, J., dissenting), which it has not, this case would satisfy such a criterion. Appellant, whom police had probable cause to believe had committed kidnapping, robbery, and murder, was at large, moving from place to place on the highways by automobile. This situation demanded direct and immediate action by the police. Had they not acted when they had information about appellant's whereabouts, he might have escaped arrest and prosecution forever.
We therefore hold that the arrest did not contravene appellant's fourth amendment rights, despite the invalid warrant, because there was probable cause to make a warrantless arrest outside his residence. See, e.g., Chrisman v. Field, 448 F.2d 175 (9th Cir.1971), cert. denied, 409 U.S. 855, 93 S.Ct. 192, 34 L.Ed.2d 99 (1972); United States ex rel. Johnson v. Rundle, 404 F.2d 42 (3d Cir.1968), cert. denied, 395 U.S. 937, 89 S.Ct. 2004, 23 L.Ed.2d 453 (1969); United States v. White, 342 F.2d 379 (4th Cir.), cert. denied, 382 U.S. 871, 86 S.Ct. 148, 15 L.Ed.2d 109 (1965); Hagans v. United States, 315 F.2d 67 (5th Cir.), cert. denied, 375 U.S. 826, 84 S.Ct. 68, 11 L.Ed.2d 58 (1963). We therefore need not concern ourselves with the question of whether the interrogation procedures used were sufficient to sever any connection between the circumstances of the arrest and appellant's confession since the arrest was unquestionably legal. See State v. Ladd, 431 A.2d 60 (Me.), cert. denied, 454 U.S. 1101, 102 S.Ct. 677, 70 L.Ed.2d 643 (1981). The statements were properly admitted into evidence.
Appellant also separately argues that his confession to the Georgia murder should not have been admitted into evidence because it was not relevant to any issue in the trial of the Florida crimes and was highly prejudicial. However, the evidence of this subsequent murder was relevant "by showing motive, intent, absence of mistake, common scheme, identity or a system or general pattern of criminality." Williams v. State, 110 So.2d 654, 662 (Fla.), cert. denied, 361 U.S. 847, 80 S.Ct. 102, 4 L.Ed.2d 86 (1959). In his confession to the Florida murder, appellant claimed that the first shot fired into Ms. Hawkins' head was accidental, having occurred when she reached for his gun, and that he fired the second shot to put her out of her misery. The evidence of the Georgia murder was relevant through similarity to raise the inference that the Florida murder was not accidental but was fully intentional. We therefore hold that the testimony about appellant's confession to the Georgia murder was relevant and admissible.
Appellant also challenges the trial court's admission of the tape recording of his confession into evidence. At trial, first the state called as a witness a police officer who was present at the confession to testify to appellant's statements. The defense objected on the ground that since the statements were recorded, the tape recording itself was the best evidence of what had been said. When the state sought to introduce the recording itself, the defense objected on the ground that a proper predicate for its admission had not been laid, arguing that the requirements of Parnell v. State, 218 So.2d 535 (Fla. 3d DCA 1969), had not been satisfied. The trial court ruled that the defense had waived these requirements by invoking the best evidence rule.
Although we disagree with the court's holding that a party waives its right to have a tape recording authenticated when it objects to testimony on the ground of the best evidence rule, we find that the recording was properly admitted. The best evidence rule is codified as section 90.952, Florida Statutes (1981), which provides: *365 "Except as otherwise provided by statute, an original writing, recording, or photograph is required in order to prove the contents of the writing, recording, or photograph." By demanding that the best evidence rule be observed (we state no position on whether appellant's objection was well-grounded in the best evidence rule) a defendant does not automatically concede that the tape to be introduced by the state is authentic. The best evidence rule and the requirement that tape recordings be authenticated are not correlative as conceived by the trial court but are separate and independent rules of evidence, each with its own scope and purpose. The invocation of the best evidence rule cannot, therefore, be deemed a waiver of the defendant's right that the tape introduced into evidence be authenticated.
Here the tape recording was authenticated and was therefore properly admitted. The laying of the predicate requires "evidence sufficient to support a finding that the matter in question is what its proponent claims." § 90.901, Fla. Stat. (1981). In determining whether the evidence submitted is sufficient for this purpose, the trial judge must evaluate each instance on its own merits, there being no specific list of requirements for such a determination. Unless clearly erroneous, the trial court's determination will be sustained. Here one of the police detectives present at the confession identified the tapes and testified that he and another detective operated the tape recorder and that as each of the three tapes was finished he punched out little tabs on them which would prevent them from being erased, recorded over or changed. He also testified that the portions of the tapes to which he had listened accurately represented what had been said during the interview of appellant. This showing was sufficient to establish that the tapes were what the state claimed them to be.
Appellant argues that the trial judge improperly limited the scope of defense counsel's cross examination of a witness for the state. The defense asked one of the crime scene investigators how well he thought the crime scene investigation had been performed. After listening to defense counsel's proffer the court ruled that the witness's answers were irrelevant. We find there has been no clear abuse of the trial court's discretion in limiting this line of cross examination. See Sireci v. State, 399 So.2d 964 (Fla. 1981), cert. denied, 456 U.S. 984, 102 S.Ct. 2257, 72 L.Ed.2d 862 (1982).
Appellant contends that the trial court made two erroneous rulings on discovery. The first ruling pertained to some police officers' written investigative reports. During the week before trial the court granted the defendant's motion to compel the production of these reports and conducted an in-camera inspection. Three days later, on the day before commencement of the trial, the prosecutor called defense counsel and notified him of their availability. Two days later, after jury selection had begun, defense counsel obtained the reports. When defense counsel objected to the state's tardiness in providing the reports, the court ruled that the objection would be denied unless the defense could show that there was something in the reports specifically contrary to the testimony of the officers. Appellant argues that there was a discovery violation and the court should have conducted a full inquiry pursuant to Richardson v. State, 246 So.2d 771 (Fla. 1971). The record shows, however, that the trial judge declined to find that there was a discovery violation, and that therefore under his ruling no Richardson hearing was required. A trial judge has broad discretion in determining whether the state has acted in good faith by making timely disclosure of material ordered by the court to be provided. Belger v. State, 171 So.2d 574 (Fla. 1st DCA), cert. denied, 176 So.2d 510 (Fla. 1965). There was no abuse of discretion here.
The second discovery ruling appellant complains of had to do with certain written statements of appellant held by the state which were not timely provided to the defense. As a sanction, defense counsel asked that the officers who had possession *366 of the statements not be allowed to testify. The court found that there had been a violation and agreed to hold an evening-session Richardson hearing. In order that the trial might proceed, however, the judge allowed the officers to testify, stating that if the Richardson hearing revealed prejudice, he would declare a mistrial. After the hearing, the court found there was nothing in the statements not already known to the defense and therefore held there was no prejudice flowing from the discovery violation. Appellant argues that the judge should have conducted the inquiry before allowing the officers to testify and that by delaying the hearing the court became biased against a finding of prejudice which would have necessitated a mistrial. Since the inquiry was made that very night, however, and not after return of a verdict, this case does not fall within the doctrine of Smith v. State, 372 So.2d 86 (Fla. 1979), and Wilcox v. State, 367 So.2d 1020 (Fla. 1979), pertaining to the timeliness of Richardson inquiries. We do not believe the court prejudged the inquiry into the circumstances of the discovery violation. Moreover, we uphold the judge's findings that the withheld information was cumulative and non-prejudicial, since appellant has not shown them to have been erroneous. See Cooper v. State, 336 So.2d 1133 (Fla. 1976), cert. denied, 431 U.S. 925, 97 S.Ct. 2200, 53 L.Ed.2d 239 (1977).
Appellant argues that the court erred in denying his motion for mistrial when, during the testimony of the victim's grandmother, the prosecutor showed her a photograph of the dead body of the deceased, with the result that the witness broke down and wept. Appellant contends that this introduced an unnecessary emotional element to the trial, with improper prejudice to himself. We have recognized that "a member of a murder victim's family may not testify for the purpose of identification of the deceased where a nonrelated witness is available to provide such identification." Lewis v. State, 377 So.2d 640, 643 (Fla. 1979). The rule is designed to avoid the potential of prejudice due to jurors' sympathy for the victim's family. In this case the witness was called to testify that her granddaughter, who lived with her, possessed hundreds of sunglasses when she left home in the morning and that her granddaughter intended to return home early that day because of the pet dog the granddaughter had just purchased as a gift for her son. This was relevant information not available from any other witness. There was no error in allowing the grandmother to testify. This was not identification testimony; the familial relationship was properly brought before the jury. However, because the witness was not needed for identification testimony, we agree with appellant that there was no need for the state's counsel to display to the grandmother a picture of her granddaughter's body. The only possible prejudice was caused by this act, and not by allowing the witness to give the relevant information referred to above. Appellant characterizes the grandmother's reaction as an emotional outburst, while the state asserts that she sobbed briefly and quickly regained her composure. Unfortunately we cannot glean from the record how intense the response was nor the degree to which it may have affected the jury. Since the trial judge was present we defer to his judgment. He found that the reaction was not of such intensity as to require a mistrial, and appellant has not shown from the record that the judge's determination was clearly erroneous. We therefore hold that the impropriety was harmless. See Scott v. State, 256 So.2d 19 (Fla. 4th DCA 1971).
The appellant also challenges the denial of defense counsel's motion for mistrial at another point in the proceedings. During the selection of the jury, the court ordered a recess. The record indicates that at this time the bailiff said, "Everyone rise and keep your places." Appellant argues that the manner in which this was said depicted him as a dangerous person and was prejudicial. Appellant's counsel raised the matter in the judge's chambers before court reconvened, and argued for a mistrial as follows:
*367 MR. MANDER: Your Honor, as we were about to break, the jury was not excused prior to your being exited from the courtroom and Mr. Jackson announced all rise and then kind of startled me too, but all of a sudden he said, everybody stay in your places. He said it very loud and very authoritative and the twelve members of the prospective jury were still standing in the jury box. The courtroom in both sides is packed with jury members and suddenly a deputy comes up and grabs ahold of Justus' arms and escorts him down among all these standing people and I think it's just extremely prejudicial. It startled me. I've never seen Mr. Jackson do it that way. He's always held them until afterward. It had to cause everybody in the courtroom to turn to look at Justus and he was escorted down there like he was a dangerous person.
THE COURT: What do you recommend?
MR. MANDER: I'd move for a mistrial.
THE COURT: Motion is denied, Mr. Mander.
After denying the motion, the judge ordered that in the future the defendant be allowed to remain seated until after the courtroom was cleared. Since the asserted impropriety occurred during voir dire examination, defense counsel could have queried the prospective jurors about whether they were affected by the bailiff's remark and conduct. Counsel could also have asked for a curative instruction to the prospective jurors. By failing to do so, defense counsel waived any impropriety and thus the point is not properly preserved for appeal. The impropriety, if indeed there was any, could have been corrected at the time by some curative measure. Moreover appellant cannot demonstrate from the record that the denial of the motion for mistrial was an abuse of discretion.
With regard to his kidnapping and sexual battery convictions, appellant argues that his pre-trial statements should not have been admitted as evidence on the kidnapping and sexual battery charges since at that time the corpus delecti of these two offenses had not been proved. This argument is refuted by reference to testimony that Ms. Hawkins was found miles away from the store at which she had intended to deliver sunglasses, that she was the victim of deadly force, and that expert serological analysis showed she was also the victim of a sexual assault. Substantial evidence showed each element of the crimes charged, so the corpus delecti of each was established. See State v. Allen, 335 So.2d 823 (Fla. 1976).
With regard to the kidnapping conviction, appellant argues that the trial court erred in refusing to dismiss the kidnapping count of the indictment. Appellant was charged with violating section 787.01(1)(a), Florida Statutes (1977), which provides:
(1)(a) "Kidnapping" means forcibly, secretly, or by threat confining, abducting, or imprisoning another person against his will and without lawful authority, with intent to:
1. Hold for ransom or reward or as a shield or hostage.
2. Commit or facilitate commission of any felony.
3. Inflict bodily harm upon or to terrorize the victim or another person.
4. Interfere with the performance of any governmental or political function.
We understand the four clauses pertaining to criminal intent to be set out disjunctively, so that there are four alternative means by which one can form the intent to commit kidnapping. Appellant was charged under clause (1)(a)2. In relevant part the indictment alleged that appellant
did, without lawful authority, forcibly, secretly, or by threat, kidnap, confine, abduct, or imprison Stephanie Michelle Hawkins, against the will of the said Stephanie Michelle Hawkins, with the intent to commit or facilitate commission of any felony.
Appellant argues that the kidnapping charge was defective in that it did not *368 allege the specific felony that the accused intended to commit by means of the kidnapping. We disagree. After denying the motion to dismiss, the court ordered the state to specify the crime intended by a statement of particulars. The state complied, averring that appellant kidnapped the victim with intent to rob her. Appellant has cited no authority, and we have found none, for the proposition that the specific felony intended to be committed or facilitated is an essential element of the offense proscribed by section 787.01(1)(a)2 and must be alleged. Here the indictment specified which of the four alternative kinds of criminal intent listed in the statute appellant acted with when he abducted the victim. We do not read Goins v. State, 406 So.2d 1199 (Fla. 2d DCA 1981), and Jones v. State, 385 So.2d 1042 (Fla. 1st DCA 1980), as being based on a per se rule that a charge of kidnapping under section 787.01(1)(a)2 must set forth the specific felony which the accused intended to commit or facilitate by means of the kidnapping. Those cases held that charging documents omitting such specification should have been dismissed because they were "so vague, indistinct and indefinite as to mislead the accused and embarrass him in the preparation of his defense." Fla.R.Crim.P. 3.140(o). To the extent that Goins and Jones held that the specific felony intended must always be particularly alleged in the indictment or information, they are disapproved. Here any vagueness was remedied by the statement of particulars and appellant was fully apprised of the charge.
We come now to consideration of asserted errors during the sentencing phase of the trial. At the sentencing hearing the state sought to introduce appellant's confession to and conviction of the crime of first-degree murder that occurred in Virginia. The court excluded the documentary evidence of the actual conviction on the ground that it was still on appeal. The court allowed, however, testimony of appellant's confession to that murder, on the ground that it was relevant to appellant's character. Appellant argues that this was error in that the purpose of such evidence was to show a significant history of prior criminal activity, which is not a statutory aggravating circumstance. See Mikenas v. State, 367 So.2d 606 (Fla. 1978). However, this Court has approved admission of testimony giving the details of a separate crime of violence where the defendant has been convicted of that crime. Elledge v. State, 346 So.2d 998 (Fla. 1977). Here the court's only error was in excluding appellant's conviction from consideration on the ground that it was being appealed. See Ruffin v. State, 397 So.2d 277 (Fla.), cert. denied, 454 U.S. 882, 102 S.Ct. 368, 70 L.Ed.2d 194 (1981); Peek v. State, 395 So.2d 492 (Fla. 1980), cert. denied, 451 U.S. 964, 101 S.Ct. 2036, 68 L.Ed.2d 342 (1981).
Appellant argues that the court gave an erroneous instruction to the jury on the consideration of mitigating circumstances. The record shows that the court gave the standard instruction on this matter. The instruction given was approved in Peek v. State. There was no error.
Appellant argues that the court erred in finding as an aggravating circumstance that the murder was committed in a cold, calculated, and premeditated manner without pretense of moral or legal justification under section 921.141(5)(i), Florida Statutes (1979). This subsection was added to the capital felony sentencing law after the murder in this case but before appellant's trial. Ch. 79-353, Laws of Fla. We held in Combs v. State, 403 So.2d 418 (Fla. 1981), cert. denied, 456 U.S. 984, 102 S.Ct. 2258, 72 L.Ed.2d 862 (1982), that this statutory aggravating circumstance could be retroactively applied since we found that it did not change the substance of the sentencing law to the detriment of capital offenders. Here appellant argues that retroactive application of the provision violates article X, section 9 of the Florida Constitution, which provides: "Repeal or amendment of a criminal statute shall not affect prosecution or punishment for any crime previously committed." We find this argument to be without merit. Dobbert v. State, 375 So.2d 1069 *369 (Fla. 1979), cert. denied, 447 U.S. 912, 100 S.Ct. 3000, 64 L.Ed.2d 862 (1980).
At the sentencing hearing, appellant testified in his own behalf. The jury recommendation was for a sentence of death. In addition to the "cold and calculated" circumstance discussed above, the court found that the capital felony was committed in connection with the crimes of robbery, rape, and kidnapping under section 921.141(5)(d). Thus there are two valid statutory aggravating circumstances to be weighed against the nonexistence of any mitigating factors. In such a case death is presumed to be the proper punishment. State v. Dixon, 283 So.2d 1 (Fla. 1973), cert. denied, 416 U.S. 943, 94 S.Ct. 1950, 40 L.Ed.2d 295 (1974). Moreover the Virginia murder, which the judge did not explicitly consider, could and should have been considered. Under these circumstances we are convinced that the result reached is proper under the law.
We affirm the convictions of first-degree murder, kidnapping, robbery, and sexual battery. We affirm the sentence of death.
It is so ordered.
ALDERMAN, C.J., and ADKINS, OVERTON and McDONALD, JJ., concur.