DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**KENDRIA WALKER,**
Appellant,

v.

**TAYLA HARLEY-ANDERSON,**
Appellee.

No. 4D19-2216

[September 9, 2020]

Appeal from the Circuit Court for the Seventeenth Judicial Circuit, Broward County; Michael G. Kaplan, Judge; L.T. Case No. DVCE 19-004177.

Kendria Walker, Coral Springs, pro se.

No appearance for appellee.

WARNER, J.

In this appeal of a final judgment of injunction for protection against stalking, the appellant contends that the trial court erred by admitting text messages showing threats made against the appellee, the sole evidence to support the entry of the injunction. We hold that the messages were not sufficiently authenticated and should not have been considered by the trial court. Therefore, we reverse.

Appellee filed a petition for injunction for protection against stalking. In it she contended that appellant had sent her multiple text messages threatening her and her family. The court entered an ex parte temporary injunction. Appellant then filed a counterpetition against appellee, also alleging stalking through multiple text messages. The court proceeded to a final hearing on the petition and counter-petition.

At the final hearing, appellee testified that she did not personally know appellant, but she knew that appellant had a relationship with appellee's nephew, which apparently had fallen apart. As a result, appellee stated that she received twenty harassing messages over a period of about six

months and then fifteen in one day, threatening violence against her and her family.

Appellee offered a series of ten pages of text messages into evidence. Appellant objected, contending that she did not recognize the telephone numbers from which the messages were sent. Over objection, the court admitted the messages. The trial court asked appellee how she knew that the messages were from appellant. After much back and forth, appellee said she knew the messages were from appellant because of the content of the messages, that they were intended to harass her, and appellant had stated that she would harass appellee's nephew's family.

The court then asked appellant if she sent the text messages. Appellant denied sending the text messages and testified that she did not know who sent them. She did not recognize the phone numbers. Her phone records were entered as an exhibit. The phone numbers on the texts to appellee did not match the phone number in appellant's record. Appellant then presented the evidence of threatening text messages that she had received. Like appellee, she did not specifically know that the text messages were from appellee but concluded that, based on their content, they had to be from someone in the nephew's family.

After the presentation of evidence, the court acknowledged in its ruling that the texts sent to both appellant and appellee were threatening and would promote fear and anxiety in the receiver. As to appellant's counterpetition, the court found that appellant candidly acknowledged that she did not know specifically who sent the messages. Therefore, the court could not enter a final judgment against appellee on the counter petition. As to appellee's petition, the court found that the texts most likely came from appellant "because there's no alternative that's been provided. So, I don't know who else would have done that and that may be just in part given the nature of the relationships here." The court then entered a final judgment in favor of appellee, and appellant now appeals that judgment.

Appellant argues that the court erred in admitting the text messages, because they were not authenticated. Review of a trial court's determination regarding the authentication of evidence is for an abuse of discretion. *Mullens v. State*, 197 So. 3d 16, 25 (Fla. 2016). However, a trial court's discretion is limited by the rules of evidence. *Nardone v. State*, 798 So. 2d 870, 874 (Fla. 4th DCA 2001).

Section 90.901, Florida Statutes (2019) provides: "[a]uthentication or identification of evidence is required as a condition precedent to its

admissibility. The requirements of this section are satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims."

"In determining whether the evidence submitted is sufficient for this purpose [of authentication], the trial judge must evaluate each instance on its own merits, there being no specific list of requirements for such a determination." *Justus v. State*, 438 So. 2d 358, 365 (Fla. 1983); *Symonette v. State*, 100 So. 3d 180, 183 (Fla. 4th DCA 2012). "Evidence may be authenticated by appearance, content, substance, internal patterns, or other distinctive characteristics taken in conjunction with the circumstances. In addition, the evidence may be authenticated either by using extrinsic evidence, or by showing that it meets the requirements for self-authentication." *Jackson v. State*, 979 So. 2d 1153, 1154 (Fla. 5th DCA 2008).

A few cases involve the authentication of text messages. In *Symonette*, for instance, we addressed the question of whether text messages from the defendant's phone were unauthentic hearsay. 100 So. 3d at 183. In that case, a detective recovered the cell phone from the defendant and then a search warrant was executed on the defendant's phone which revealed the text messages. The co-defendant driver testified that she texted the defendant while they were sitting next to each other and then continued to text the defendant later after they were separated. The driver identified the text messages between her and the defendant and testified as to the context of the text messages. This court concluded that "[t]he extrinsic evidence offered by the State, as well as the circumstances surrounding the procurement of the phone and pictures, is sufficient to show that the matter in question is genuinely what the State claims – pictures of the defendant's text messages to the driver." *Id.* Thus, the photographs of the text messages were sufficiently authenticated to be admissible at the murder trial. In *State v. Lumarque*, 44 So. 3d 171 (Fla. 3d DCA 2010), the court held that text messages and photos were authenticated, because those images were found on the defendant's phone which was seized pursuant to a search and extracted from it by a forensic expert who testified. Unlike the foregoing cases, appellant's cell phone was not examined, and the appellee did not even testify that she recognized appellant's phone number.

"Testimony that a person received a text or email from another is not sufficient, by itself, to authenticate the identity of the sender." Charles W. Ehrhardt, 1 *West's Fla. Practice Series* section 901.1a (2020 ed.). Other factors can circumstantially authenticate the text. *Id. See, e.g., United States v. Siddiqui*, 235 F. 3d 1318, 1322 (11th Cir. 2000) (finding that a

number of factors supported the authenticity of the email, that the address bore the defendant's address and when the witness replied to the email the "reply function" of the witness's email system automatically put the defendant's address as the sender; the context of the email showed details of the defendant's conduct and an apology that correlated to the defendant's conduct; and the email referred to the author by defendant's nickname and the witnesses confirmed that in phone conversations the defendant made the same requests as in the emails); *Pavlovich v. State*, 6 N.E. 3d 969, 978-79 (Ind. Ct. App. 2014) (finding text messages had been properly authenticated by circumstantial evidence by a witness who confirmed that the 2662 number was used to arrange a meeting with the defendant; that the witness recognized the defendant's voice on the outgoing voicemail; and that the messages from the 2662 number indicated familiarity with the witness' escort business, the prior meeting between the witness and defendant and their prior discussion); *compare Commonwealth v. Koch,* 39 A. 3d 996, 1005 (Pa. Super. Ct. 2011) (finding the trial court erred in admitting text messages into evidence; there was no testimony from the persons who sent or received the text messages and no contextual clues).

"Circumstances recognized as sufficient to meet the test of authenticity include when a letter is written disclosing information which is likely known only to the purported author." *State v. Love,* 691 So. 2d 620, 621 (Fla. 5th DCA 1997) (citing *ITT Real Estate Equities v. Chandler Ins. Agency, Inc.*, 617 So. 2d 750, 751 (Fla. 4th DCA 1993)). In *Love,* the letter "contained specific details concerning the crime, the relationship between the co-defendants, incriminating evidence, and a proposed plan to fabricate testimony. This information was likely known only by the three co-defendants." *Id.* The court cited other details in the letter and concluded that the trial court erred by excluding the letter because there was prima facie evidence that the defendant or someone acting as his scribe wrote the letter.

In *Gosciminski v. State,* 132 So. 3d 678 (Fla. 2013), the supreme court addressed a question of authentication of a receipt. In that case, the trial court found a Walgreens receipt admissible because it was printed on paper with a distinctive green Walgreens logo watermark, the Walgreens' return policy was printed on the back of the receipt; the front of the receipt showed no evidence of tampering; and the time and date stamp matched the account of the purchase. *Id.* at 700. "These distinctive characteristics of the receipt in conjunction with the other circumstances, i.e., the trail of documentary evidence that supported [the witness's] testimony . . . were adequate authentication." *Id.* Thus, the supreme court concluded the receipt was properly admitted. "[E]vidence may be authenticated by

examination of its appearance, contents, substance, internal patterns, or other distinctive characteristics taken in conjunction with the circumstances." *Id.* (citing *Coday v. State*, 946 So. 2d 988, 1000 (Fla. 2006)).

In this case, there was no direct evidence that the messages were sent by appellant. No one saw or heard appellant send the messages. The messages appear to be from different phone numbers, and none of the origination numbers match the phone number of appellant, according to her phone bill placed into evidence. The trial court did not analyze the content of the messages but simply found no other explanation as to who sent them. This is insufficient, particularly after our review of the messages themselves.

Outside of a few references in the messages to the name of appellant's boyfriend, the nephew of the appellee, and a reference to "aunty" there are no clues as to who sent the messages or what they are about. The discord between the nephew and appellant appears to be well known between the two families. The first five pages of texts offered by appellee are dated January 1, and appellee testified that the year was 2019. These texts purportedly come from three different phone numbers. None of the phone numbers match the phone numbers on appellant's phone bill. Appellee did not testify that she recognized any of the numbers on the texts. Their substance generally refers to the nephew and threats to kill him but is populated with the pronoun "we" and not "I" indicating that multiple people are involved in these threats. One of the messages refers to appellant in the third person, indicating that it was sent from someone other than appellant.

As noted by the court, the last five pages of texts look different than the first five pages of texts. None of these texts are dated. Only the first two pages of the photographs of the text messages have origination phone numbers. Neither of the origination phone numbers match appellant's phone numbers on her bill. The remaining pages of text messages show only a day of the week and time, no origination phone number. In this group of texts, there is no mention of the nephew or of details known only to the appellant. In fact, one of the messages seems to convey that the sender has been wronged by a woman, not the nephew.

To summarize, the contextual clues in the texts are insufficient to provide authentication that these texts were sent by appellant. The messages do not contain any information which would have been known only to the appellant. The direct evidence is insufficient as well. The messages do not show appellant's telephone number as sender.

5

As the proponent of admission of the evidence, it was the appellee's burden to prove the authenticity of the text messages as being sent by appellant. Thus, the trial court's rationale that no other explanation for the messages was offered placed on appellant the obligation of disproving their authenticity. This was error.

"[A]uthentication for the purpose of admission is a relatively low threshold that only requires a prima facie showing that the proffered evidence is authentic[.]" *Mullens*, 197 So. 3d at 25. Even so, the instant case lacks the "distinctive characteristics" of *Gosciminski* or the contextual clues of *Love*. The text messages were not obtained pursuant to a search warrant from appellant's phone, and no circumstantial support shows appellant to be the author of the texts as in *Symonette* or *Lumarque*.

The appellee failed to make a prima facie showing of authenticity, i.e. that the text messages were what appellee claimed – messages authored by appellant. Accordingly, the trial court abused its discretion in admitting the text messages into evidence.

Because the text messages were the sole evidence to support the final judgment of injunction, and appellee has not contested this appeal, we conclude that we should reverse for vacation of the judgment and dismissal of the petition. Appellee should not get the proverbial "second bite at the apple" under the circumstances of this case. *See Morales v. Fifth Third Bank,* 275 So. 3d 197 (Fla. 4th DCA 2019)(adopting the analysis of *Tracey v. Wells Fargo, N.A.,* 264 So. 3d 1152 (Fla. 2d DCA 2019) ("[W]hen fashioning remand for a civil appeal where the party with the burden of proof fails to sufficiently plead the claim it presents at trial or to establish a basis in admissible evidence for a claim at trial, an appellate panel may exercise some level of equitable discretion to consider the circumstances of the particular case. This discretion is bounded both by the substantive relief sought within the appeal and the strong preference for finality of trial proceedings.")

*Reversed and remanded with directions to dismiss the petition.*

GROSS and GERBER, JJ., concur.

\*       \*       \*

***Not final until disposition of timely filed motion for rehearing.***